722 So.2d 409 (1998)
Noland W. DUBOIS, Plaintiff-Appellee,
v.
LOUISIANA FOREST INDUSTRIES, INC., Defendant-Appellant.
No. 98-895.
Court of Appeal of Louisiana, Third Circuit.
December 9, 1998.
*411 George Arthur Flournoy, Alexandria, for Noland Dubois.
Stephen C. Resor, J. Geoffrey Ormsby, Michael M. Meunier, New Orleans, for Louisiana Forest Industries, Inc.
Before PETERS, SULLIVAN and PICKETT, Judges.
PETERS, J.
In this workers' compensation case, the employer, Louisiana Forest Industries, Inc., appeals a judgment that awarded the employee, Noland W. Dubois, among other things, supplemental earnings benefits, $8,000.00 in penalties, and $17,000.00 in attorney fees.

DISCUSSION OF THE RECORD
On September 7, 1993, Noland W. Dubois sustained a right knee injury while in the course and scope of his employment with Louisiana Forest Industries, Inc. (hereinafter defendant). Dubois was employed as a machine operator at the defendant's sawmill in Montgomery, Louisiana, when the accident occurred. Upon informing his employer of the accident, he was sent to a physician in Winnfield, Louisiana. From there, Dubois went to the emergency room at Rapides Regional Medical Center in Alexandria, Louisiana, where he was prescribed pain medication and released.
On the day after the accident, Dubois was examined by Dr. Chris J. Rich, an Alexandria, Louisiana orthopedic surgeon. Dr. Rich was unable to reach an initial diagnosis because of Dubois's significant pain and the swelling in the right knee. He prescribed more pain medication and placed Dubois in physical therapy.
On October 1, 1993, Dr. Rich performed an arthroscopy on Dubois's knee. The procedure revealed a dislocated patella, a medial meniscus tear, a sprained anterior cruciate ligament, and a sprained medial collateral ligament. During the procedure, Dr. Rich attempted to correct the patella dislocation and remove the tear in the medial meniscus. Based on his assessment of the procedure results, Dr. Rich expected Dubois to have an uneventful recovery and to fully recover at eight to ten weeks.
This expectation was not realized. By November 1, 1993, Dubois had shown very minimal progress toward recovery, and on that date, Dr. Rich performed a manipulation of the knee under general anesthesia in an attempt to break up any accumulated scar tissue. Within a week of the procedure, *412 Dubois's pain had returned. At that point, Dr. Rich ordered physical therapy, opining that the only answer for Dubois's continued problems was for Dubois to be as active as possible. As of November 10, 1993, Dr. Rich's impression was that Dubois suffered from reflex sympathetic dystrophy (RSD).[1]
When Dubois saw Dr. Rich on December 14, 1993, Dubois complained of significant pain, was still having problems with weight bearing, and was not showing the range of motion desired at that point. At that time, Dr. Rich and Dubois discussed the possibility of treatment through epidural steroid injections. Based on this discussion, Dubois underwent a series of three epidural steroid injections, with each injection providing significant pain relief, but only until the medication wore off. Because of the continued complaints of pain, Dr. Rich referred Dubois to Dr. Michael Conerly, an Alexandria, Louisiana general surgeon, who performed a sympathectomy on the patient on January 31, 1994.[2]
Dubois continued to see Dr. Rich, and on March 8, 1994, reported to the doctor that his pain had improved but was still present. Dubois was still using crutches and could not tolerate any significant weight bearing. Dr. Rich again sent Dubois to physical therapy. On the April 19, 1994 visit, Dr. Rich found that Dubois's condition had changed very little, noting that he still had to use crutches, had significant pain, had atrophy in his muscle, and had a lack of normal range of motion. Dr. Rich testified that, by this time, he had done all that he knew to do and that, therefore, he discussed with Dubois the possibility of having a functional capacity evaluation performed.
The functional capacity evaluation was performed by a physical therapy center in Alexandria, Louisiana, on May 2, and May 4, 1994. The findings of that evaluation classified Dubois at a sedentary level and restricted his employment possibilities to predominantly sitting-type jobs not requiring significant walking. Based on this evaluation and his own medical findings, Dr. Rich was of the opinion that as of May 24, 1994, Dubois had reached maximum medical improvement. Additionally, he was of the opinion that, although Dubois was not totally disabled, he could not return to his former employment.
The defendant, through an outside agency, attempted to provide vocational rehabilitation services for Dubois and identified two jobs for him. However, the defendant discontinued providing vocational rehabilitation services to Dubois in 1994. Dubois did not return to any employment.
Dubois also sought treatment with Dr. Baer I. Rambach, a Shreveport, Louisiana orthopedic surgeon, which treatment was not approved by the defendant. After examining Dubois on November 11, 1994, Dr. Rambach also concluded that Dubois had developed RSD. He prescribed medication and referred Dubois to the Pain Care Consultants of Shreveport, Louisiana, a pain control center comprised of Drs. F. Glenn Sholte, Kathleen Majors, and Donna M. Holder.
Dubois returned to Dr. Rich on February 13, 1996, and the examination results were typical of past examinations. Dr. Rich noted significant atrophy; diffuse edema of the lower leg; hyperesthesia, or pain with light touch and palpation, around the leg; and limited range of motion. Dr. Rich noted that Dubois was still unable to bear weight and was still using crutches.
Prior to his return to Dr. Rich, on March 16, 1995, Dubois was evaluated by Pain Care Consultants. There, he underwent an epidural injection and a series of three intravenous regional blocks. Due to the drive to Shreveport, Dubois requested that he be referred to Dr. Miguel Garcia-Caro, an Alexandria, Louisiana rheumatologist, for further treatment. Dr. Majors then referred Dubois to Dr. Garcia-Caro, who saw him for the first time on March 28, 1996. Dr. Garcia-Caro agreed with Drs. Rich and Rambach that Dubois suffered from RSD and that the condition was causally connected to the work *413 injury. Dr. Garcia-Caro noted tenderness, decreased temperature over a portion of the leg, hyperalgesia, and mild right trochanteric bursitis. Dr. Garcia-Caro referred Dubois to Dr. James W. Quillin, an Alexandria, Louisiana psychologist, who ultimately diagnosed Dubois as having nonpsychotic depression with possible somatization.
Dubois continued to see Dr. Garcia-Caro, and on June 6, 1996, the doctor found that Dubois had improved. As a result of this finding, the doctor decided to proceed with aggressive physical therapy. On August 22, 1996, Dubois returned to Dr. Garcia-Caro with complaints of severe pain in his right knee. However, the pain was more of a mechanical pain that occurred when Dubois used his leg, and Dubois did not have the hyperalgesia and temperature changes in his knee that are classic symptoms of RSD. Therefore, Dr. Garcia-Caro concluded that the pain was not as a result of the RSD and opined that the RSD had been controlled. X-rays were taken and revealed early osteophyte formation compatible with osteoarthritis in the early stages. Dr. Garcia-Caro concluded that the majority of Dubois's pain at that time was as a result of osteoarthritis and bursitis. He was also of the opinion that more probably than not Dubois's injury contributed to his developing osteoarthritis at an earlier age and that the osteoarthritis had been accelerated by the injury to his knee. (Dubois was thirty-two years old at the time of the accident.) He concluded that Dubois might benefit from further arthroscopic surgery. Dr. Garcia-Caro saw Dubois again on September 12, 1996. X-rays showed what appeared to be osteochondritis dissecans in the right knee, which Dr. Garcia-Caro described as a separation of a part of the joint. Dr. Garcia-Caro noted that the RSD had improved.
On September 16, 1996, Dr. Rich saw Dubois on referral from Dr. Garcia-Caro. The purpose of this visit was for a reevaluation to determine whether another arthroscopy was in order. At that time, Dubois was no different than he was when Dr. Rich had seen him in April of 1994, and Dubois was still using crutches. Dr. Rich was of the opinion that Dubois needed to obtain a functional level of employment that he could tolerate, and the doctor placed him at "very low sedentary" and "[n]ot even light duty" work. He agreed that the work restrictions set forth in the May 1994 functional capacity evaluation were still valid but felt that additional surgery would not improve Dubois's knee function. Still, Dr. Rich was of the opinion that Dubois was in need of some type of treatment for his problems.
Dr. Garcia-Caro continued to see Dubois, with April 24, 1997, being the last visit before Dr. Garcia-Caro's deposition. As of that date, the doctor was of the opinion that Dubois's prognosis was "guarded." However, Dr. Garcia-Caro was also of the opinion that as of his last two visits with Dubois, Dubois did not show any evidence of RSD in that all of the changes of swelling and temperature were gone. Dr. Garcia-Caro was of the opinion that the bursitis along with the early osteoarthritis were the current causes of Dubois's disability and that these conditions would continue to slowly worsen. Dr. Garcia-Caro testified that "[t]hat's not something we can really take care of ... unless you change the knee."
In terms of long-range treatment, Dr. Garcia-Caro testified that Dubois will need to be followed by a general practitioner who can provide him with nonsteroidal anti-inflammatory agents to control his pain as well as occasional pain pills. Additionally, Dr. Garcia-Caro was of the opinion that an orthopedic surgeon or a rheumatologist would be needed when Dubois has exacerbations. Dr. Garcia-Caro had not released Dubois from his care as of the time of trial.
Dr. Garcia-Caro also testified to Dubois's limitations, stating that the pain in Dubois's knee will become exacerbated by walking long distances as well as by lifting and carrying heavy weights. He testified that Dubois can do any kind of sitting but that standing for more than an hour, walking long distances, going upstairs/downstairs, repetitive lifting from the floor, and repetitive bending of his knees to squat would be problematic for him. However, the doctor was of the opinion that from a physical standpoint, Dubois could work.
*414 Dubois has a tenth grade education and some vocational training. His entire work history is that of manual labor. He testified that he has pain in his leg every day and that he continues to use crutches. As of the time of trial, Dubois had not attempted to work and had continued to receive weekly compensation benefits.
The workers' compensation judge awarded Dubois, among other things, supplemental earnings benefits. Additionally, the workers' compensation judge awarded Dubois penalties of $2,000.00 and attorney fees of $5,000.00 for the discontinuance of weekly benefits on two occasions during 1997, penalties of $2,000.00 and attorney fees of $2,000.00 for nonpayment and/or untimely payment of medical expenses, penalties of $2,000.00 and attorney fees of $5,000.00 for the failure to authorize reasonable and necessary medical services, and penalties of $2,000.00 and attorney fees of $5,000.00 for the failure to provide timely and suitable vocational rehabilitation services. The defendant appeals, and Dubois has answered the appeal, seeking an increase in attorney fees for work necessitated by the appeal.

SUPPLEMENTAL EARNINGS BENEFITS
The workers' compensation judge awarded Dubois supplemental earnings benefits "for as long as his post-accident wages (or his ability to earn wages) are less than ninety percent of his average weekly wage of $258.67...." The defendant contends that the workers' compensation judge erred as a matter of law in determining that Dubois was entitled to supplemental earnings benefits.
In a claim for supplemental earnings benefits, initially, the employee bears the burden of proving by a preponderance of the evidence that the injury resulted in his inability to earn ninety percent or more of his average pre-injury wage. Banks v. Indus. Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97); 696 So.2d 551. Once the employee meets this burden of proof, the burden shifts to the employer, who, in order to defeat the employee's claim or establish the employee's earning capacity, must prove by a preponderance of the evidence that the employee is physically able to perform a certain job and that the job was offered to the employee or available to the employee in his or the employer's community or reasonable geographic region. Id.
Specifically, the defendant contends that Dubois did not meet his initial burden of proving by a preponderance of the evidence that he is unable to earn wages equal to ninety percent of the wages he earned prior to the work injury. We disagree. Based on the functional capacity evaluation, Dr. Rich was of the opinion that Dubois could not return to his former employment. As of September 16, 1996, the last time Dr. Rich saw Dubois, Dr. Rich placed Dubois in the "very low sedentary" work category, noting that he would not place him in "even light duty." Dr. Garcia-Caro testified that Dubois can work from a physical standpoint but noted certain restrictions in standing, walking, lifting, and bending. Dubois's employment with the defendant involved manual labor, and it does not appear that Dr. Garcia-Caro released him to return to his former employment. Therefore, we find no manifest error in the factual finding that Dubois met his initial burden of proving that the injury resulted in his inability to earn ninety percent or more of his average pre-injury wage.
The defendant further argues that because Dubois did not attempt to return to work, he is not entitled to supplemental earnings benefits. In support, the defendant cites Goodly v. Colston, 96-1438 (La.App. 3 Cir. 4/2/97); 692 So.2d 695. However, the matter before us is clearly distinguishable from Goodly. In Goodly, the employer offered the claimant a job within his restrictions at his previous pay rate, but the claimant declined the offer because he was taking Tylenol 3 due to an unrelated automobile accident. The workers' compensation judge refused to award supplemental earnings benefits after the date of the employer's job offer and indicated that if the claimant had accepted the job and been unable to work, her credibility evaluations might have been different. This court affirmed, finding significant in part the claimant's failure to return to work. In the instant case, there is no *415 evidence that the defendant offered Dubois a job within his restrictions. Goodly does not stand for the proposition that the mere failure to attempt to return to some form of employment precludes an award of supplemental earnings benefits. As noted in Banks, 696 So.2d 551, 558 n. 5, "[i]t is the employer who bears the burden of proving job availability and the claimant's post-injury earning capacity, and the employer cannot shift this burden to the employee by pointing to his lack of effort in seeking post-injury employment."
The defendant did identify jobs for Dubois between August 30, 1994 and October 31, 1994. However, the record does not reveal that any of Dubois's physicians approved these jobs. Additionally, this information is stale because the trial of this matter was held on September 4, 1997, and the defendant discontinued its rehabilitation efforts in 1994. Therefore, we affirm the award of supplemental earnings benefits.

PENALTIES AND ATTORNEY FEES
Dubois's accident occurred prior to the 1995 amendments to the workers' compensation penalty and attorney fee statutes. In a workers' compensation case, the governing law is that which was in effect at the time of the alleged injury. Bruno v. Harbert Int'l Inc., 593 So.2d 357 (La.1992). In Rollins v. Glitsch Field Services, Inc., 97-1404 (La. App. 3 Cir. 5/13/98); 713 So.2d 674, this court held that the 1995 amendments to La.R.S. 23:1201 and La.R.S. 23:1201.2 are to be applied prospectively only. Thus, we will apply the law in effect at the time of the injury.
At the time of Dubois's injury, La.R.S. 23:1201(E) provided for penalties for the failure to timely pay compensation or medical benefits unless the nonpayment resulted from conditions over which the employer/insurer had no control or unless the employee's right to the compensation or medical benefits had been reasonably controverted. Additionally, at that time, La.R.S. 23:1201.2 provided for attorney fees for the prosecution and collection of claims for the failure to pay claims within sixty days after receipt of written notice or for discontinuing to pay claims due, when the failure or discontinuance was found to be arbitrary, capricious, or without probable cause.

Penalties for Discontinuance of Weekly Compensation Benefits
The record reflects that weekly benefits were interrupted from April 9, 1997 through June 18, 1997. These benefits were paid by check dated June 20, 1997. Additionally, weekly benefits were interrupted from June 19, 1997 through August 6, 1997. These benefits were paid by checks dated August 6, 1997. The workers' compensation judge awarded penalties of $2,000.00 for these interruptions of benefits. The defendant argues that this award was in error as a matter of law because in making the award, the workers' compensation judge used the wrong standard, i.e., the arbitrary and capricious standard, which does not apply to penalties.
The defendant is correct that the arbitrary and capricious standard is not the proper standard to be applied in determining whether an award of penalties should be made. Rather, as set forth in former La.R.S. 23:1201(E), whether an award of penalties should be made turns in part on whether the employer reasonably controverted the employee's right to compensation. However, this argument is hypertechnical because it appears from the workers' compensation judge's reasons for judgment that, while she did not use the phrase "reasonably controverted," she found that the defendant had not reasonably controverted Dubois's right to the compensation at issue. Therefore, we reject the defendant's argument in that regard.
The defendant also defends the interruption of benefits on the basis of clerical oversights, which were remedied as soon as the errors were discovered. However, as a matter of law, an employer cannot urge its own poor clerical work or administrative lapses to escape penalties for nonpayment. Rollins, 713 So.2d 674. Therefore, we affirm the workers' compensation judge's award of penalties of $2,000.00 for the interruption of workers' compensation benefits.

*416 Penalties for Failure to Timely Pay for or Authorize Medical Expenses and Vocational Rehabilitation

The workers' compensation judge awarded three penalties of $2,000.00 each for the failure to timely pay for or authorize medical expenses and vocational rehabilitation. The defendant contends that this was error, and we agree. In LeJeune v. Trend Services, Inc., 96-550 (La.App. 3 Cir. 6/4/97); 699 So.2d 95, this court held that while the 1993 version of La.R.S. 23:1201 provided for one maximum penalty of $2,000.00 for the failure to timely pay any and all compensation benefits and one maximum penalty of $2,000.00 for the failure to timely pay any and all medical benefits, the statute did not provide a penalty for each claim of unpaid medical benefits. Therefore, only one penalty is recoverable.
One of the three $2,000.00 penalty awards was for the defendant's failure to provide or pay for a new pair of crutches for Dubois; for the failure to timely pay a Rapides Radiology Associates bill of $31.50 for services rendered on April 21, 1994; and for the failure to timely pay a Schumpert Medical Center bill for services rendered in January through March of 1996. The workers' compensation judge found that demand was made for payment of the Rapides Radiology Associates bill on December 14, 1994,[3] but that this bill was not paid until January 29, 1996. Additionally, the workers' compensation judge found that demand was made for payment of the Schumpert Medical Center bill on April 22, 1996, but that this bill was not paid until August 19, 1996.
La.R.S. 23:1203(A) provides in part that the employer "shall" furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal. Dubois had previously received a pair of crutches. He made demand for the new pair of crutches on April 24, 1997. As of that date, Dubois was still under Dr. Garcia-Caro's care, and Dr. Garcia-Caro was of the opinion that Dubois's prognosis was "guarded." At the trial of this matter, Dubois testified that he has pain everyday and has to use crutches all the time to get around. Gerald Peltier, an adjuster with Alexis, the third-party administrator, testified that he did not know why new crutches were not authorized in response to the demand. Concerning the payment of the two medical bills, Peltier offered no explanation as to why these bills were not timely paid. Under these circumstances, we find no manifest error in the conclusion that Dubois's right to the crutches and the payment of the two medical bills was not reasonably controverted. Therefore, we affirm the award of $2,000.00 in penalties in that regard. Having found that the workers' compensation judge did not err in awarding penalties for the failure to provide crutches and to timely pay medical bills, we need not address the merits of the remaining awards of penalties. Because only one award is available, these other awards must be set aside.

Attorney Fees
The workers' compensation judge awarded attorney fees of $5,000.00 for the discontinuance of Dubois's weekly benefits, $2,000.00 for the failure to provide crutches and the failure to timely pay two medical bills, $5,000.00 for the failure to provide vocational rehabilitation services, and $5,000.00 for the failure to authorize treatment with Dr. Rambach and Dr. Garcia-Caro, for a total award of $17,000.00. The defendant appeals this award.
At the time of the injury, La.R.S. 23:1201.2 provided in part that an insurer or an employer
shall pay the amount of any claim due under this Chapter within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject employer or insurer ... to payment of all reasonable attorney's fees for the prosecution and collection of such claim.... Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without *417 probable cause, shall be subject to the payment of all reasonable attorney's fees for the prosecution and collection of such claims.
We find no manifest error in the workers' compensation judge's findings that the interruption of weekly benefits and the failure to provide the crutches and to timely pay the two medical bills were arbitrary, capricious, or without probable cause. The defendant provided no explanation for its failure in this regard other than its own poor clerical work. We note that all such payments were made by the time of trial except for the cost of the crutches. An award of attorney fees is made only for that portion of the claim that results in an award. IHS/Heritage Manor v. Smith, 98-9 (La.App. 3 Cir. 4/29/98); 710 So.2d 1204. However, while the benefits and the two medical bills were paid prior to trial such that these claims were not prosecuted at trial, Dubois is still entitled to reasonable attorney fees for the prosecution and collection of the penalties awarded for these delinquent payments. See LaHaye v. Westmoreland Cas. Co., 509 So.2d 748 (La.App. 3 Cir.1987). Therefore, we find no error in these attorney fee awards.
The workers' compensation judge ordered the defendant to provide vocational rehabilitation services and awarded attorney fees for the defendant's failure to provide Dubois with timely and suitable vocational rehabilitation services. This court held in Rollins, 713 So.2d 674, that the workers' compensation law does not provide attorney fees for the arbitrary and capricious delay in implementing rehabilitation. Rollins uses the penalties language, i.e., failure to pay "compensation or medical benefits," not only in the context of the analysis of the penalty issue but also in the context of the analysis of the attorney fee issue. We respectfully disagree because the attorney fee statute is not as restrictive as the penalty statute. Rather, La.R.S. 23:1201.2 provides for attorney fees for the failure to pay "any claim due." We find that vocational rehabilitation is a "claim due" because La.R.S. 23:1226(A) provides that the employee shall be entitled to prompt rehabilitation services when the employee has suffered an injury which precludes him from earning wages equal to wages earned prior to the injury, and in the instant case, Dubois is unable to earn wages equal to wages earned prior to the injury. Additionally, while La.R.S. 23:1226, the vocational rehabilitation statute, does not authorize an award of attorney fees, neither does it preclude such an award. Therefore, we hold that attorney fees may be awarded for the failure to provide vocational rehabilitation.
We will now address whether the discontinuance of vocational rehabilitation services in 1994 was arbitrary, capricious, or without probable cause. In the instant case, it appears from the closure report of the agency retained by the defendant to provide vocational rehabilitation that it discontinued rehabilitation efforts due to the "non-cooperation" of Dubois's attorney. However, La. R.S. 23:1226(E) provides in part that if the employee refuses to accept rehabilitation as deemed necessary by the workers' compensation judge, he must take a fifty percent reduction in weekly compensation for each week of the period of refusal. The defendant could have brought this matter before the workers' compensation judge for such a determination rather than unilaterally terminating its injured employee's statutory right to vocational rehabilitation. For this reason, we find that the defendant was arbitrary, capricious, and without probable cause in refusing to provide further vocational rehabilitation.
Finally, we address whether the workers' compensation judge erred in awarding attorney fees for the failure to authorize a change of physicians to Dr. Rambach and for the failure to authorize continued treatment with Dr. Garcia-Caro. Certainly, La. R.S. 23:1201.2 would allow for attorney fees for this type of denial. Additionally, La.R.S. 23:1121(C) provides in part that if the employer has not consented to the employee's request to change physicians when such consent is required and it is determined by a court having jurisdiction that the withholding of such consent was arbitrary and capricious or without probable cause, the employer shall be liable to the employee for reasonable attorney fees related to this dispute. We will *418 now address the defendant's conduct in this regard.
On October 28, 1994, Dubois made demand for examination and treatment by Dr. Rambach. Although not approved, Dubois saw Dr. Rambach, who recommended that Dubois receive treatment at a pain control center. The defendant authorized the treatment at the pain control center, and Dubois did in fact receive such treatment. The defendant notified Dr. Rambach of this authorization and requested that any future authorizations requested be submitted for response. We have not found where Dubois requested further authorization concerning Dr. Rambach. In any event, due to the drive to Shreveport for treatment at the pain control center, Dubois requested that he be referred to Dr. Garcia-Caro for treatment. Dr. Rambach, like the pain control center, is located in Shreveport. Because Dubois already indicated that he did not want to continue driving to Shreveport, we find manifest error in the workers' compensation judge's conclusion that the defendant's conduct in refusing to authorize the change of physician was arbitrary, capricious, or without probable cause.
However, concerning the failure to authorize continued treatment with Dr. Garcia-Caro, the employee is entitled not only to treatment that cures his work injury but also to palliative care that relieves his pain. Scott v. Piccadilly Cafeteria, 97-1584 (La.App. 3 Cir. 4/1/98); 708 So.2d 1296. There is no evidence in the record that Dubois was a malingerer, and he testified at trial that he has pain in his leg every day. Therefore, we find no manifest error in the award of attorney fees in this regard.
The defendant questions the reasonableness of the attorney fee awards, but we find no abuse of discretion in the amounts of the awards.
Dubois has answered the appeal, seeking an increase in attorney fees for work done on appeal. We award attorney fees of $5,000.00 for the appellate work.

DISPOSITION
For the foregoing reasons, we reverse the award of penalties in connection with the failure to continue vocational rehabilitation and the failure to authorize a change of physician. We award Dubois attorney fees of $5,000.00 for the work done on appeal. We affirm the judgment in all other respects and assess costs of this appeal to the defendant.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.
NOTES
[1] Dr. Rich described this condition as a pain syndrome in which there is hyperactivity of the sympathetic nervous system.
[2] This procedure was described as being the removal of a section of the sympathetic nervous chain.
[3] The record reflects that demand was actually made on December 15, 1994.