784 So.2d 872 (2001)
Fuleasha ALEXANDER
v.
ROY O. MARTIN LUMBER COMPANY As Managing Partner of Martco.
No. 00-1344.
Court of Appeal of Louisiana, Third Circuit.
May 9, 2001.
*874 George Arthur Flournoy, Flournoy, Doggett & Losavio, Alexandria, LA, Counsel for Appellee: Fuleasha Alexander.
Karen Julian King, Borne, Wilkes & Brady, Lafayette, LA, Counsel for Appellant: Roy O. Martin Lumber Company as Managing Partner of Martco.
Court composed of DOUCET, Chief Judge, THIBODEAUX, DECUIR, PETERS and AMY, Judges.
DOUCET, Chief Judge.
Roy O. Martin Lumber Company (Martco) appeals a judgment of the Office of Workers' Compensation (OWC) in favor of Claimant, Fuleasha Alexander, ordering it to provide vocational rehabilitation services to Claimant while she recovers from a work-related injury, plus penalties and attorney's fees for the employer's arbitrary discontinuance of vocational rehabilitation services and for its failing to timely approve recommended arthroscopic knee surgery. The employee answered the appeal requesting additional attorney's fees for the work necessitated by this appeal. We affirm the judgment of the OWC and award additional attorney's fees of $3,500.00.

FACTS
On September 11, 1997, Fuleasha Alexander was working as a shipping clerk for Roy O. Martin Lumber Company (Martco) in Chopin, Louisiana, when a forklift backed into her, causing severe injuries to her right leg and foot. As a result of the accident, Ms. Alexander has undergone reconstructive surgery and plastic surgery on her right leg.
*875 From the date of the accident, Martco provided Ms. Alexander with medical and total temporary disability (TTD) benefits. Thereafter, in February of 1998, Martco contacted Jus Mar Rehabilitation Services (Jus-Mar) to begin providing vocational rehabilitation services to Ms. Alexander. The record indicates that beginning in March of 1998, Mark Cheairs, the vocational rehabilitation consultant handling Ms. Alexander's file, began attempting to schedule appointments with Ms. Alexander and her attorney to conduct an initial vocational evaluation. Mr. Cheairs also began monitoring Ms. Alexander's scheduled appointments with her treating plastic surgeon, Dr. Seluck Sozen; her first orthopedic surgeon, Dr. Vanda Davidson; and with her treating orthopedic surgeon, Dr. Baer Rambach.
Although Mr. Cheairs did meet with Ms. Alexander and her attorney's secretary at a rehabilitation conference with Dr. Sozen in June of 1998, the parties were unable to coordinate a subsequent meeting in order to conduct the initial vocational evaluation. However, the record reveals that Mr. Cheairs sent numerous functional capacity evaluation (FCE) forms to Dr. Rambach in an attempt to determine her physical work limitations so that he could begin seeking employment opportunities for her.
Following his December 22, 1998, physical exam of Ms. Alexander, Dr. Rambach indicated on a FCE form that Ms. Alexander was neither homebound nor bedridden and listed her physical restrictions as standing and walking for twenty minutes at a time for a total of two to three hours per day; sitting one hour at a time for a total of four hours a day; and driving for thirty minutes at a time for a total of one hour per day.
Mr. Cheairs reviewed Dr. Rambach's report and decided he should meet with Martco's corporate manger of insurance, Terry Garrett, to discuss returning Ms. Alexander to work in a modified job position at Martco. In February of 1999, Martco offered Ms. Alexander a sedentary clerical position at the mill.
After attempting the job for several days, she indicated to her attorney, who, in turn, sent correspondence to Martco explaining that Ms. Alexander was having problems with her leg injury as a result of her work at the mill. Specifically, he explained that Ms. Alexander was having problems due to the length of time she spent driving from her home to the mill and having to walk up two flights of stairs to get to her work site within the mill. Ms. Alexander also stated that she was emotionally upset from having to work around forklifts again.
Ms. Alexander scheduled an appointment with Dr. Rambach for March 1, 1999, to reevaluate her physical abilities in light of her recent attempt to return to work. In his report of that examination, Dr. Rambach noted that Ms. Alexander presented with "increasing severe pain and discomfort in her right knee." He indicated that there was "exquisite tenderness palpable over the anterior aspect and particularly over the patella tendon which is exquisitely tender." Dr. Rambach suggested that Ms. Alexander be taken off the job because he did not believe she was able to drive the distance to and from work nor was she able to negotiate the required two flights of stairs. Dr. Rambach stated that he could not say when she would be able to return to work.
In an attempt to accommodate Ms. Alexander further, Martco offered to move the clerical position to the ground floor of its administrative building. However, since the driving element of the job was still present, Ms. Alexander did not attempt to return to Martco. At this point, Jus-Mar *876 placed Ms. Alexander's file on hold until further notice from Martco.
On August 24, 1999, Ms. Alexander filed a Workers' Compensation 1008 Disputed Claim Form asserting that she was entitled to penalties and attorney's fees due to Martco's alleged "failure to pay medical and retraining expenses" and for "discontinuance of voc-rehab." Ms. Alexander alleged that from March until August, Martco had failed to offer any vocational rehabilitation services to her. Additionally, Ms. Alexander had begun taking classes at Northwestern State University in the Fall of 1998, and she alleged that Martco was obligated to pay her college tuition, books, and travel expenses, claiming that these expenses were necessary retraining expenses as a part of her vocational rehabilitation.
During the pendency of Ms. Alexander's claim, Jus Mar sent a letter to Ms. Alexander on November 20, 1999, suggesting that she apply at the job placement office at Northwestern State University, which she did. Next, Mr. Cheairs conducted a labor market survey in Natchitoches to see if there was sedentary work available in that area that would be applicable to Ms. Alexander's vocational profile and would entail a limited amount of driving. By December 14, 1999, Mr. Cheairs had identified four sedentary job possibilities in the Natchitoches area and forwarded the job analyses to Ms. Alexander and to Dr. Rambach for his approval. Mr. Cheairs testified that he never received a response from either person regarding the acceptability of the job possibilities, and, thus, he again placed Ms. Alexander's case on hold until further notice.
Dr. Rambach testified that he found it to be useless to review the job analyses at that time because he had determined after Ms. Alexander's examination on October 15, 1999, that the pain in her knee had worsened throughout the year which had limited her physical ability to perform essentially any sedentary work. Moreover, Dr. Rambach stated that due to Ms. Alexander's increase in pain, he recommended that she undergo arthroscopic surgery on her knee. Thus, he stated that he would reserve any recommendation for work until after the surgery was complete.
Upon receiving Dr. Rambach's recommendation for surgery, Martco requested a second opinion and scheduled an appointment for Ms. Alexander to be examined by a second orthopedic surgeon, Dr. David Pope. While the appointment was originally scheduled for January 10, 2000, it did not take place until January 24, due to a delay in the forwarding of Ms. Alexander's medical records from Dr. Rambach's office to Dr. Pope. Nevertheless, after his examination, Dr. Pope concurred in Dr. Rambach's recommendation for surgery, and it was eventually authorized by Martco on February 16, 2000.
A hearing on Ms. Alexander's workers' compensation claim was scheduled for May 23, 2000. In her pretrial statement to the OWC, Ms. Alexander reasserted the claims she had originally listed in the 1008 Disputed Claim Form for retraining expenses and for sanctions and attorney's fees arising out of Martco's discontinuance of vocational rehabilitation services. Ms. Alexander also added a claim for penalties and attorney's fees due to Martco's alleged failure to timely authorize Ms. Alexander's requested knee surgery.
In response, Martco contended in its pretrial statement that all workers' compensation benefits had been paid timely and that all medical treatment had been furnished to Ms. Alexander within the time allowable by law, and, thus, it was not responsible for penalties and attorney's fees arising out of these claims. Additionally, it asserted that Ms. Alexander was no *877 longer entitled to TTD benefits and that she had failed to cooperate with the vocational rehabilitation efforts provided by Martco.
Prior to the hearing on the merits, Martco filed a motion for summary judgment as to Ms. Alexander's claim that she was entitled to college tuition and related costs as retraining expenses. The workers' compensation judge (WCJ) agreed with Martco and granted the summary judgment dismissing that specific claim. The remaining disputed issues were heard on May 23, 2000. On June 1, the WCJ signed a written judgment ordering Martco to provide vocational rehabilitation services to Ms. Alexander; awarded $2,000.00 in attorney's fees for the discontinuance of vocational rehabilitation, $2,000.00 in penalties and $2,000.00 in attorney's fees for Martco's failure to timely authorize surgery; and $250.00 in penalties and $750.00 in attorney's fees for Martco's failure to timely provide Ms. Alexander with Dr. Pope's written medical report of his examination of Ms. Alexander.
Martco appealed the judgment assigning error to all findings of the WCJ as well as his failure to reduce Ms. Alexander's TTD benefits. Ms. Alexander appealed asserting a claim for the attorney's fees incurred on appeal in the amount of $5000.00.

LAW AND DISCUSSION

TTD BENEFITS
Martco claims that the WCJ either neglected to or refused to consider the issue of whether or not Ms. Alexander is entitled to continue to receive full TTD benefits. Martco alleges, however, that sufficient evidence was presented to conclude that she had not satisfied her burden of proving that she continues to be entitled to full TTD benefits.
As alleged by Martco in its brief, the judgment rendered by the WCJ does not speak to this issue, although the claim was made in its pretrial statement to the WCJ and evidence was presented on whether or not Ms. Alexander was able to perform sedentary work. Notwithstanding a direct denial of this claim by the WCJ, we can infer the judgment's silence as to this issue is a rejection Martco's claim as a whole. See Collins v. Family Dollar Stores, Inc., 99-622 (La.App. 1 Cir. 5/12/00); 760 So.2d 1210, writs denied, 00-2356, 00-2363 (La.11/13/00); 773 So.2d 727.
It has been stipulated by the parties that from the date of the accident, Martco has paid Ms. Alexander TTD benefits in the amount of $341.00 per week. La.R.S 23:1221(1)(d) states that:
An award of benefits based on temporary total disability shall cease when the physical condition of the employee has resolved itself to the point that a reasonably reliable determination of the extent of disability of the employee may be made and the employee's physical condition has improved to the point that continued, regular treatment by a physician is not required.
As Martco sought to have Ms. Alexander's TTD benefits reduced, it had the burden of proving by a preponderance of the evidence the essential elements for terminating TTD benefits as found in La. R.S. 23:1221(1)(d). Bonded Freight Inc. v. Bowens, 96-167 (La.App. 3 Cir. 6/12/96); 676 So.2d 739.
Martco claimed that Ms. Alexander's condition had resolved to the point that she was not totally disabled and that she could return to sedentary work. In support of its contention that Ms. Alexander is capable of functioning at a sedentary level, Martco relies on the fact that Ms. Alexander has been attending college classes since the Fall of 1998. It further alleges that Ms. Alexander's daily routine of traveling *878 to and from the college campus and sitting in class for several hours a day is evidence that she can work at a sedentary level. Martco also asserts that Ms. Alexander personally admitted that if Dr. Rambach had approved, she would have attempted the sedentary positions offered by Jus-Mar in December of 1999. We find this of no support to Martco; rather it appears to show Claimant's willingness to return to work if her doctor thought her able to do so.
Ms. Alexander rebuts Martco's assertion by relying on the medical opinion of Dr. Rambach. In his deposition testimony, Dr. Rambach continuously opines that Ms. Alexander is unable "to return to any gainful work at this particular time" due to her inability to sit for a significant amount of time without experiencing severe pain in her leg. He explained that he did not believe that her injury would lead to a permanent disability, but that further arthroscopic surgery and rehabilitation would be necessary. Dr. Rambach also refuted Martco's contention that Ms. Alexander is capable of performing sedentary work just because she is able to attend classes. He points out that most professors are aware of a person's disability and will accommodate a disabled student to the greatest extent practicable. Ms. Alexander testified that she was allowed by her professors to prop her leg up on another desk in class and to excuse herself from class if she was experiencing a lot of pain.
We conclude that Martco has failed to demonstrate that Ms. Alexander's injury "has resolved itself to the point that a reasonably reliable determination of the extent of disability of the employee may be made and the employee's physical condition has improved to the point that continued, regular treatment by a physician is not required," (La.R.S.23:1221(1)(d)) even though she is functioning as a college student. In light of the unwavering medical opinion of her treating physician, Dr. Rambach, regarding Ms. Alexander's inability to work at this time, we find no manifest error in the WCJ's rejection of Martco's request to reduce Ms. Alexander's TTD benefits.

VOCATIONAL REHABILITATION SERVICES
Martco argues that the workers' compensation judge erred by ordering it to provide further rehabilitation services to Ms. Alexander. It asserts that it has fulfilled its obligation to provide vocational rehabilitation to Ms. Alexander and that it is she and her attorney who have refused the services offered by Jus Mar. Moreover, Martco claims that Ms. Alexander's decision to attend college rather than attempt a modified position with Martco or apply for other suitable jobs should act as a waiver of her right to vocational rehabilitation and result in a fifty percent reduction in her indemnity benefits as required by law.
The requirements for the rehabilitation of injured employees are set forth in La. R.S. 23:1226, which states, in part:
A. When an employee has suffered an injury covered by this Chapter which precludes the employee from earning wages equal to wages earned prior to the injury, the employee shall be entitled to prompt rehabilitation services.
B. (1) The goal of rehabilitation services is to return a disabled worker to work, with a minimum of retraining, as soon as possible after an injury occurs. The first appropriate option among the following must be chosen for the worker:
(a) Return to the same position.
(b) Return to a modified position.
(c) Return to a related occupation suited to the claimant's education and marketable skills.

*879 (d) On-the-job training.
(e) Short-term retraining program (less than twenty-six weeks).
(f) Long-term retraining program (more than twenty-six weeks but not more than one year).
(g) Self-employment.
(2) Whenever possible, employment in a worker's local job pool must be considered and selected prior to consideration of employment in a worker's statewide job pool.
(3) The employer shall be responsible for the selection of a vocational counselor to evaluate and assist the employee in his job placement or vocational training. Should the employer refuse to provide these services, the employee may file a claim with the office to review the need for such services in the same manner and subject to the same procedures as established for dispute resolution of claims for workers' compensation benefits.
Ms. Alexander alleges that Martco has engaged in "sham rehabilitation." She claims that Jus-Mar and Martco have offered her only jobs they know she is not physically capable of performing. Ms. Alexander claims that Martco failed to offer any rehabilitative services from April to August of 1999, and only reinitiated efforts after she filed this claim. Additionally, she alleges that from January of 2000 to date, Jus Mar has again discontinued its services. Ms. Alexander's attorney claims that a "truly motivated" vocational consultant could assist Ms. Alexander by "focusing his efforts in Natchitoches on part-time work with computer programming oriented businesses; he could assist in planning her curriculum so that she can graduate from college as quickly as possible; he could assist in getting her grants for disabled students; finally, he could assist by beginning the search now for possible job placement after her graduation."
We agree that Ms. Alexander has demonstrated that she is entitled to rehabilitation services, since the facts indicate that she is an employee suffering from a work-related injury which precludes her from earning wages equal to the amount earned prior to the accident. See La.R.S. 23:1226(A). Regardless, the goal of rehabilitation is to return the disabled worker to gainful employment as soon as possible, with a minimum of retraining. The testimony of Ms. Alexander and Mr. Cheairs indicates that she has the requisite educational training to perform a modified position at Martco or any of the four identified clerical positions offered to her by Jus Mar. However, Dr. Rambach has continuously physically restricted Ms. Alexander from engaging in any employment at this time.
The WCJ did not specifically state in his judgment as to the type or to what extent Martco was ordered to provide vocational rehabilitation to Ms. Alexander. Yet, we agree with the WCJ's order and find that Martco is obligated to continue in its effort to work with Ms. Alexander's medical providers in an attempt to return Ms. Alexander to gainful employment in the first appropriate option listed in La.R.S. 23:1226, that suits her identified vocational limits, as soon as physically possible.
Additionally, after reviewing Ms. Alexander's actions in working with Jus Mar in the past, we find no merit in Martco's assertion that she has waived her right to future rehabilitative services or that it is entitled to a reduction in weekly indemnity benefits for her alleged refusal to participate in the offered rehabilitative services.
Therefore, for the reasons explained above, we find no manifest error in the WCJ's order of continued rehabilitation services as mandated by La.R.S. 23:1226. *880 Attorney's Fees for Discontinuance of Rehabilitation Services
The WCJ awarded Ms. Alexander $2,000.00 in attorney's fees for Martco's discontinuance of vocational rehabilitation. Martco resists the award of attorney's fees by asserting that it never "discontinued" rehabilitation services to Ms. Alexander. Martco explains that although Jus-Mar administratively closed Ms. Alexander's file in its office from March until August of 1999, that it never discontinued its efforts to work with Ms. Alexander in trying to return her to work.
An employer who arbitrarily and capriciously or without probable cause discontinues the payment of claims due to a workers' compensation claimant, shall be subject to the payment of all reasonable attorney's fees for the prosecution and collection of those claims. La.R.S. 23:1201.2. Vocational rehabilitation services have been found to be a "claim due" under La.R.S. 23:1201 .2, thus entitling a claimant to attorney's fees incurred during the prosecution of a claim against an employer for those services after they have been arbitrarily and capriciously discontinued. Dubois v. Louisiana Forest Indus., Inc., 98-895 (La.App. 3 Cir. 12/9/98); 722 So.2d 409, writ denied, 99-49 (La.2/26/99); 738 So.2d 586. An employer's actions are deemed to be arbitrary and capricious when they consist of willful and unreasoning action, without consideration for the facts and circumstances presented. East-Garrett v. Greyhound Bus Lines, 99-421 (La.App. 3 Cir. 11/3/99); 746 So.2d 715.
Furthermore, it is well settled that:
Whether the workers' compensation judge's decision to grant [a Claimant]... an award of penalties and attorney's fees was proper is essentially a question of fact which we will not disturb on appeal in the absence of a manifest error. When the trier of fact's findings are reasonable in light of the entire record, an appellate court may not reverse a choice between two permissible views of the evidence.
Perot v. Link Staffing Services, 99-229, p. 7 (La.App. 3 Cir. 6/23/99); 744 So.2d 80, 85, writ not considered, 99-2247 (La.11/5/99); 751 So.2d 230 (citation omitted).
Upon our examination of Martco's actions in this matter, we find no error in the WCJ's ruling on this issue. Jus Mar closed its file on Claimant between the months of March and August of 1999. Although immediately prior to the lapse in contact between Ms. Alexander and Jus Mar she had unsuccessfully attempted to return to a modified position at Martco and was then restricted by Dr. Rambach from attempting any further sedentary employment at that time, Martco retained an obligation to provide further rehabilitative services to Ms. Alexander as a result of the severity of her injury. Thus, we find the WCJ's order of attorney's fees was not manifestly erroneous and we affirm that portion of the judgment.

FAILURE TO TIMELY AUTHORIZE SURGERY
The WCJ awarded Ms. Alexander $2,000.00 in penalties and $2,000.00 in attorney's fees for unreasonably delaying the approval of the arthroscopic surgery recommended to Martco by Dr. Rambach on October 28, 1999.
The record indicates that Martco received Dr. Rambach's written medical report and surgery recommendation on October 28, 1999. Dr. Rambach's report states that:
I would recommend that the patient have arthroscopic surgery to the knee. This could be done as a Day Surgery. She would need to be on crutches for *881 approximately 2 weeks and I would suggest that we do this at the beginning of the Christmas holiday vacation. This would allow the patient to continue with her school semester and not have to miss any school.
Mr. Garrett, Martco's corporate insurance manager, testified that after review of Dr. Rambach's report, he wanted to procure a second opinion on the necessity of the surgery. However, he failed to explain why he waited until December 17, 1999, to schedule an appointment for Ms. Alexander to be examined by Dr. Pope on January 10, 2000, long after the Christmas holidays.
Ms. Alexander alleges that Martco unreasonably delayed the approval of her surgery when she made Martco aware of her need for surgery in October of 1999 and that it failed to approve the surgery until February of 2000. Thus, their untimely actions necessitate penalties and attorney's fees.
The WCJ made a factual determination that Martco did not reasonably controvert Ms. Alexander's request for knee surgery. Reviewing the evidence presented by each party, we cannot say that this finding was clearly wrong or manifestly erroneous, and thus, it will not be disturbed upon review. See Kibodeaux v. Cajun Bag and Supply Co., 99-149 (La.App. 3 Cir. 6/2/99); 742 So.2d 582.

FAILURE TO TIMELY PROVIDE A MEDICAL REPORT
In its final assignment of error, Martco alleges that the WCJ erred in awarding $250.00 in penalties and $750.00 in attorney's fees for its alleged failure to timely provide Ms. Alexander with Dr. Pope's written medical report following his examination of her on January 24, 2000. Martco claims that La.R.S. 23:1125, the statute applicable to an employee's right to the written report of a medical examination conducted at the request of an employer, required at the time of Ms. Alexander's accident in 1997, that an employer release the medical report only on written request by the employee. Therefore, since there was no written request submitted by Ms. Alexander, it was never under a duty to supply her with the report.
Ms. Alexander points out that La.R.S. 23:1125 was amended by Acts 1999, No. 134 § 1 to require the employer to submit the written report of the results of the examination to the employee within thirty days of the employer's receipt of the medical report, regardless of written demand by the employee. Thus, it claims that the law at the time Martco failed to submit the medical report did not require that written notice be given and, accordingly, penalties and reasonable attorney's fees are justified.
We find merit in Ms. Alexander's claim and her reliance on a similar case, Skipper v. Acadian Oaks Hospital, 00-67 (La.App. 3 Cir. 5/3/00); 762 So.2d 122, wherein a panel of this court analyzed the jurisprudential rule that the law applicable to an employee's claim for workers' compensation benefits was the law in effect at the time of the accident. However, after a thorough review of the applicable jurisprudence, the court in Skipper held that it was the law at the time of the denial of medical benefits which governed the imposition of penalties under La.R.S. 23:1201.
We find the reasoning in Skipper to be applicable to the present issue. The amendment to La.R.S. 23:1125, eliminating the requirement that an employee submit a written request to an employer, became effective June 9, 1999, approximately six months prior to Martco's request that Ms. Alexander submit to a physical exam by Dr. Pope, and to its subsequent receipt of Dr. Pope's written medical report arising *882 out of that examination. Consequently, we find that the statute as amended was applicable at the time Martco failed to present Ms. Alexander with a copy of the report within thirty days of its receipt of the report. Thus, without identifying a just cause for its failure to do so, we find that the WCJ was not manifestly erroneous in its decision to impose the statutorily mandated civil penalty of $250.00, plus reasonable attorney's fees for the collection of such penalty. Moreover, we find no clear error in the WCJ's award of $750.00 as a reasonable attorney's fee.

ADDITIONAL ATTORNEY'S FEES
As to Ms. Alexander's request for further attorney's fees on appeal, we find that an additional award of $3,500.00 is a reasonable amount, given the additional time and effort incurred by counsel in his successful defense of the issues appealed. See Gallien v. Winn-Dixie, 96-832 (La. App. 3 Cir. 12/11/96); 685 So.2d 531.

DECREE
For the foregoing reasons, the judgment of the WCJ is affirmed. Additionally, we render judgment in favor of the claimant, Fuleasha Alexander, for an additional $3,500.00 as attorney's fees incurred as a result of this appeal. The costs associated with this appeal are assessed against the Defendant, Martco.
AFFIRMED AND RENDERED.
AMY, J., concurs in part, dissents in part, and assigns reasons.
AMY, J., concurring in part, dissenting in part.
I respectfully dissent from only that part of the majority opinion which affirms the WCJ's assessment of attorney's fees against Martco for its alleged "discontinuance" of vocational rehabilitation services to Ms. Alexander. I do not find Martco's handling of Ms. Alexander's case on this specific issue, constitutes an arbitrary and capricious failure to provide services due which would warrant the imposition of attorney's fees as contemplated by La.R.S. 23:1201.2.
As for the remainder of the majority opinion, I concur.