855 So.2d 426 (2003)
The MITCHELL COMPANY,
v.
MUCAVIL, INC., et al.
No. 02-381.
Court of Appeal of Louisiana, Third Circuit.
October 1, 2003.
*427 Neil H. Mixon, Jr., Powers & Willard, L.L.P., Baton Rouge, LA, for Plaintiff/Appellee: The Mitchell Company.
Peter J. Losavio, Jr., Losavio Law Firm, Baton Rouge, LA, for Defendant/Appellant: Stice-Hill Edgewood Plaza.
Court composed of ULYSSES GENE THIBODEAUX, MICHAEL G. SULLIVAN, and BILLY H. EZELL, Judges.

ON REHEARING
This matter is before us on motions for rehearing filed by the parties. For the following reasons, the application for rehearing is denied in part and granted in part.

Facts and Procedural History
On June 23, 1995, The Mitchell Company sued Mucavil, Inc. (Mucavil) and Stice-Hill Edgewood Plaza (A Partnership In Commendam) (Stice-Hill) to collect a "management and leasing fee" pursuant to the terms of a lease between Mucavil, Inc. and Piggly Wiggly Red River Co., Inc. (Red River) dated December 11, 1972. At the time the lease was perfected, Mucavil owned the property which is the subject of the lease. Stice-Hill purchased the property from Mucavil in 1979.
The provision at issue provides:
It is agreed that Singer Housing Company d/b/a The Mitchell Company, P.O. Box 2008, Mobile, Alabama 36601, has represented LESSOR in negotiating and securing this lease with LESSEE and that LESSOR and its successors in title to said real estate shall pay to said The Mitchell Company six per cent (6%) management and leasing fee.
On May 28, 1997, a trial on the merits was held. Thereafter, the trial court issued written reasons in favor of The Mitchell Company against Stice-Hill. Pursuant to an exception of prescription filed by Stice-Hill, The Mitchell Company's recovery was limited to those claims which arose within the three-year period prior to its filing suit. Judgment in accordance with those reasons was signed on April 23, 1998. The judgment provided in part: "the plaintiff should collect 6% on all future rental income from this property in accordance with the terms of the lease." The Mitchell Company filed a motion for new trial, and on August 12,1998, the trial court signed a judgment granting the motion in part.
On January 3, 2001, The Mitchell Company filed a "Petition For Rule" in which it alleged that Stice-Hill had terminated the 1972 lease and entered into a new lease with another lessee on December 1, 1997 and that it was entitled to 6% of all rental income, past and future, received by Stice-Hill under the December 1, 1997 lease. The basis of this last allegation is that the leased premises has been, and continues to be, operated as a Piggly Wiggly. Stice-Hill filed exceptions of unauthorized use of summary procedure, no cause of action, and res judicata.
At the hearing on The Mitchell Company's Rule, the parties stipulated the following facts: six months remained on the 1972 lease when it was terminated; McDaniel Food Management (McDaniel) is the lessee under the 1997 lease and was subleasing the property from Fleming Foods when the 1972 lease was terminated; there is no affiliation between Red Riverthe original lessee, Fleming Foodsthe successor to Red River, and McDaniel; Piggly Wiggly is a franchise; McDaniel holds several Piggly Wiggly franchises in different geographical areas; Fleming Foods had a valid business reason to terminate the lease; and McDaniel *428 wanted a new lease under which it was lessee.
After the hearing, the trial court issued written reasons, ruling in favor of The Mitchell Company. On November 5, 2001, a judgment in accordance with the trial court's reasons was signed. Stice-Hill filed this appeal, assigning five errors. Four of the assigned errors arise from the April 23, 1998 and August 12, 1998 judgments. The fifth assignment pertains to the November 5, 2001 judgment. The Mitchell Company filed a motion to dismiss/motion to strike Stice-Hill's appeal with regard to any issue relating to the April 23, 1998 and August 12, 1998 judgments. The motion was referred to the merits of this appeal.

Motion to Dismiss/Motion to Strike Appeal
As noted above, Stice-Hill assigns four errors which pertain to the April 23, 1998 and August 12, 1998 judgments.[1] It contends that the April 23, 1998 and August 12, 1998 judgments are not final judgments under La.Code Civ.P. art. 1915(B) because The Mitchell Company's claims against Mucavil, Inc. were not adjudicated therein; therefore, appeal delays on these judgments have not run. In response, the Mitchell Company argues that the trial court's silence regarding its claims against Mucavil is a rejection of those claims and that the judgments are final judgments as contemplated by La.Code Civ.P. art.1915 for which appeal delays have run; therefore, they cannot be modified on appeal.
When the April 23, 1998 and August 12, 1998 judgments were signed, La.Code Civ.P. art. 1915(B) (emphasis added) provided, in pertinent part:
(1) When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, theories, or parties, whether in an original demand, reconventional demand, cross-claim, third party claim, or intervention, the judgment shall not constitute a final judgment unless specifically agreed to by the parties or unless designated as a final judgment by the court after an express determination that there is no just reason for delay.
(2) In the absence of such a determination and designation, any order or decision which adjudicates fewer than all claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties and shall not constitute a final judgment for the purpose of an immediate appeal. Any such order or decision issued may be revised at any time prior to rendition of the judgment adjudicating all the claims and the rights and liabilities of all the parties.
After being served with the petition in this matter, Mucavil filed an answer and a cross-claim against Stice-Hill. It was notified of the May 28,1997 trial date but did not file a motion for continuance or other pleading regarding the trial. The trial proceeded as scheduled; Mucavil was unrepresented. The record reflects that counsel for The Mitchell Company and Stice-Hill contemplated taking the deposition of Mucavil's representative for trial purposes because he was incarcerated but did not. The Mitchell Company did not file a motion to sever its claims against Mucavil, nor did it attempt to reserve its *429 rights against Mucavil. Stice-Hill did not assert any claims against Mucavil in its pleadings or at trial.
We have considered these facts, together with the jurisprudential rule that a judgment's silence as to an issue is a rejection of the claim, Alexander v. Roy O. Martin Lumber Co., 00-1344 (La.App. 3 Cir. 5/9/01), 784 So.2d 872, writ denied, 01-1684 (La.9/21/01), 797 So.2d 676, and conclude that the trial court's failure to award judgment in favor of The Mitchell Company against Mucavil was a rejection of those demands. See also City of Eunice v. Credeur, 02-188 (La.App. 3 Cir. 10/9/02), 828 So.2d 710, writ denied, 02-2751 (La.1/31/03), 836 So.2d 68. Accordingly, we hold that the April 23, 1998 and August 12, 1998 judgments were final judgments and that Stice-Hill's appeal of them is untimely. Stice-Hill's appeal is dismissed with regard to these judgments.

November 5, 2001 Judgment

Designation as a Final Judgment
Stice-Hill's last assignment of error addresses the correctness of the November 5, 2001 judgment. Before we can address the merits of this assignment of error, we must determine whether the judgment, which was designated a final judgment, was properly certified as such. Shapiro v. L & L Fetter, Inc., 02-933 (La.App. 1 Cir. 2/14/03), 845 So.2d 406. In Shapiro, the court held that a trial court's designation of a partial judgment as final without an express determination under Article 1915 is "deficient," Id. at 410, and that an appellate court is not bound by such a designation and must make a de novo determination of the finality of the judgment. Therefore, we must determine if this judgment is final, i.e., does it "determine[ ] the merits of [the] controversy, in whole or in part[?] La.Code Civ.P. art. 1841." Doyle v. Mitsubishi Motor Sales of Am., Inc., 99-459, 99-460, p. 10 (La.App. 1 Cir. 3/31/00), 764 So.2d 1041, 1047, writ denied, 00-1265 (La.6/16/00), 765 So.2d 338.
In Banks v. State Farm Ins. Co., 30,868 (La.App. 2 Cir. 3/5/98), 708 So.2d 523, the court considered the following factors to determine whether a partial judgment should be certified as immediately appealable:
(1) The relationship between the adjudicated and the unadjudicated claims;
(2) The possibility that the need for review might or might not be mooted by future developments in the district court;
(3) The possibility that the reviewing court might be obliged to consider the same issue a second time;
(4) The presence or absence of a claim or counterclaim which could result in setoff against the judgment sought to be made final; and
(5) Miscellaneous facts such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.
Id. at 525 (citing Allis-Chalmers Corp. v. Philadelphia Elec. Co., 521 F.2d 360 (3 Cir.1975)).
The November 5, 2001 judgment affects only Stice-Hill's obligation to The Mitchell Company under the 1997 lease between it and McDaniel. Our determination of this issue should resolve the need for further litigation in this matter. Considering these facts, we find the November 5, 2001 judgment was properly certified as a final judgment.

The Mitchell Company's Right to a Fee under the 1997 Lease
The November 5, 2001 judgment extends Stice-Hill's obligation under the 1972 lease to pay The Mitchell Company a 6% fee to the 1997 lease. We begin our *430 consideration of this issue with a review of the trial court's reasons for judgment and the judgment based on those reasons and observe that this issue appears to have arisen, at least in part, from the use of the phrase "Piggly Wiggly tenant" in the April 23, 1998 judgment. In its Reasons for Judgment dated March 19, 1998, the trial court stated: "the plaintiff should collect 6% on all future rental income from this property in accordance with the terms of the lease." However, the April 23, 1998 judgment based on these reasons provides: "The Mitchell Company shall be entitled to collect and Stice-Hill [ ] shall pay to The Mitchell Company 6% on all future rental income received by Stice-Hill ... from Piggly Wiggly, tenant, ... in accordance with the terms of the lease." (Emphasis added.)
All of the allegations in The Mitchell Company's original and amending petitions concern the 1972 lease. The only pleading which references the December 1997 lease is the "Petition For Rule" filed January 3, 2001. The trial on the merits was held May 19, 1997, seven months before the 1972 lease was terminated and the 1997 lease was confected. Thus, the "the lease" referenced in the trial court's March 19, 1998 Reasons for Judgment and the April 23, 1998 judgment is the December 1972 lease, not the 1997 lease.
The November 5, 2001 judgment orders:
The Mitchell Company is entitled to collect and Stice-Hill ... is liable to and shall pay to The Mitchell Company 6% on all rental income monies received by Stice-Hill ... from the Piggly Wiggly tenancy, including all past and future rental income monies received by Stice-Hill... pursuant to the lease dated December 1, 1997 between Stice-Hill and McDaniel Food Management.
(Emphasis added.)
In Written Reasons for Judgment issued September 4, 2001, the trial court determined that Stice-Hill is obligated to pay The Mitchell Company a 6% fee regardless of the change in tenants, reasoning:
In deciding this matter, the court refers to its previous Written Reasons for Judgment dated March 19, 1998. In the opinion, the court discusses the extensiveness of the above quoted clause [in the 1972 lease which provides the fee to be paid The Mitchell Company]. According to Louisiana Civil Code Article 2046, when the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. Thus, this court reiterates its previous decision that the 6% clause quoted above is contained in the original lease that is recorded and it specifically provides that it is binding on the "lessor and its successor in title." A purchaser of the property is bound by the terms and conditions of a recorded lease which covers the property.
As stated in its previous opinion, the court finds that the defendant became legally bound to the 6% clause when it acquired the property in question and became the lessors' successors [sic] in title. Accordingly, The Mitchell Company is entitled to collect 6% on all future rental income from this property regardless of the change in tenants. Therefore, this court finds that pursuant to the April 23, 1998 judgment, The Mitchell Company is entitled to collect six (6) percent on all rental income received by The Stice-Hill/Edgewood Plaza from the Piggly Wiggly tenancy, including all past and future rental income monies received by Stice-Hill Edgewood Plaza pursuant to the lease dated December 1, 1997 between Stice-Hill and McDaniel Food Management.
The trial court correctly noted that the phrase "lessor and its successor in *431 title" binds "[a] purchaser of the property [to] the terms and conditions of a recorded lease which covers the property." See Prados v. S. Cent. Bell Tel. Co., 329 So.2d 744 (La.1975). However, the trial court failed to consider La.Civ.Code art. 2727 when it held that Stice-Hill's obligation to pay the 6% fee extended to its 1997 lease with McDaniel. Article 2727 provides that a lease ceases "at the expiration of the time agreed on." Pursuant to Article 2727, the 1972 lease was only effective until it expired by its own terms; therefore, the trial court's extension of Stice-Hill's obligation to pay the 6% fee beyond the term of the lease was error.
The Mitchell Company argues that because the 1998 judgments are final judgments and the November 5, 2001 judgment is based on those judgments this court cannot do anything that affects the 1998 judgments. As discussed above, we agree that the 1998 judgments are final and cannot be changed. However, we are not called on to modify those judgments. This is clear when one considers that the 1972 lease does not extend Stice-Hill's obligation to pay the 6% fee beyond the term of the lease; neither of the 1998 judgments extends Stice-Hill's obligations under the 1972 lease beyond the term of that lease; the trial court's written reasons for the April 23, 1998 judgment and the judgment itself reference Stice-Hill's obligation regarding the "Piggly Wiggly tenant" and "Piggly Wiggly tenancy" in the context of being "in accordance with the terms of the lease," which is the December 1972 lease, not the December 1997 lease; and the 1972 lease provided that the 6% fee was for negotiating and securing "this lease" the 1972 lease. Furthermore, The Mitchell Company provided the 6% fee lease provision to the preparer of the 1972 lease, and if it had intended for the 6% fee to extend to a new lease, it could have negotiated such a provision and prepared the provision to so provide. It did not.
There is no basis for the trial court's extension of Stice Hill's obligation to pay the 6% fee to the 1997 lease with McDaniel, and it is reversed.

Stice-Hill's Obligation to The Mitchell Company under the Terminated Lease
Finally, we must determine whether the termination of the 1972 lease by Stice-Hill and Fleming Foods affected Stice-Hill's obligation to pay the 6% fee. The April 23, 1998 judgment provided that the 6% fee provision in the 1972 lease was a stipulation pour autrui. Louisiana Civil Code Article 1978 provides that "[o]nce the third party has manifested his intention to avail himself of the benefit, the parties may not dissolve the contract by mutual consent without the beneficiary's agreement." Filing suit manifests the beneficiary's intent to take advantage of the benefit. See Andrepont v. Acadia Drilling Co., 255 La. 347, 231 So.2d 347 (1969).
We have not found any cases which interpret this provision in a similar situation. However, the plain wording of the statute leads us to the conclusion that, once the five-year option was exercised, The Mitchell Company was entitled to collect 6% of the monies collected by Stice-Hill during that option period and, without The Mitchell Company's agreement to terminate the lease, Stice-Hill remained obligated to pay the 6% fee for the remainder of the 1972 lease.
As previously noted, the parties stipulated that six months remained on the lease when it was terminated. Pursuant to the terms of the Termination Agreement, which references Stice Hill's December 1, 1997 lease agreement with McDaniel, we conclude that the 1972 lease would have terminated June 30, 1998. Therefore, Stice-Hill's obligation to pay The Mitchell Company the 6% fee under the *432 1972 lease did not cease until June 30, 1998.

Disposition
The Mitchell Company's motion to dismiss appeal/motion to strike appeal is granted with regard to Stice-Hill's assignments of error which pertain to the April 23, 1998 and August 12, 1998 judgments. The trial court's judgment dated November 5, 2001 is reversed to the extent that it orders Stice-Hill to pay The Mitchell Company a 6% fee on rental income monies it received or receives pursuant to the December 1, 1997 lease after June 30, 1998. Costs of this appeal are assessed equally to the parties.
REHEARING DENIED IN PART AND GRANTED IN PART.
NOTES
[1] These issues are not properly before us for the reasons set forth in our original unpublished opinion. See The Mitchell Co. v. Mucavil, Inc., 02-381 (La.App. 3 Cir. 2/5/03), 838 So.2d 942. However, due to the nature of the arguments asserted by the parties on these issues, we address them fully herein.