760 So.2d 1210 (2000)
Jo Ann COLLINS
v.
FAMILY DOLLAR STORES, INC.
No. 99 CA 0622.
Court of Appeal of Louisiana, First Circuit.
May 12, 2000.
Rehearing Denied July 7, 2000.
*1211 J. Craig Lejeune, Baton Rouge, for Plaintiff-Appellant Jo Ann Collins.
Donald R. Klotz, Jr., Metairie, for Defendant-Appellee Family Dollar Stores, Inc.
Before: LeBLANC and PETTIGREW, JJ., and KLINE,[1] J. Pro Tem.
*1212 PETTIGREW, J.
In this workers' compensation case, the claimant appeals a judgment denying her claims for reinstatement of benefits together with the applicable penalties and attorney fees. For the following reasons, we reverse and render.

FACTS AND PROCEDURAL HISTORY
Claimant, Jo Ann Collins, was injured on September 14, 1995, during the course and scope of her employment as the store manager of Family Dollar Stores, Inc., # 749 in Baker, Louisiana. Ms. Collins was fifty-four years old at the time of the accident. Ms. Collins fell from a twelve-foot ladder sustaining injuries to her back and leg. Later that day, Ms. Collins sought treatment from her family physician, Dr. Wyman Walker, who treated her for approximately four weeks and then referred her to Dr. Ronald D. Sylvest, an orthopaedic surgeon in Baton Rouge, Louisiana.
Ms. Collins first saw Dr. Sylvest on October 16, 1995, and he diagnosed a lumbar/cervical strain. Dr. Sylvest prescribed physical therapy and a Medrol Dosepak for the swelling. At that time, Dr. Sylvest opined that Ms. Collins was unable to return to work from October 16, 1995, through October 30, 1995. Ms. Collins next saw Dr. Sylvest on November 3, 1995, at which time it was determined that she should continue with her anti-inflammatory medication and cervical traction. In addition, Dr. Sylvest prescribed Darvocet for pain. Ms. Collins returned for a follow-up appointment on November 16, 1995, reporting to Dr. Sylvest that some days were better than others. During this time, Ms. Collins remained off of work and continued with the physical therapy that had been prescribed by Dr. Sylvest. According to the records from Future Physical Therapy, Ms. Collins received a total of eight treatments from October 19, 1995, to November 28, 1995, and did not report any significant improvement. Ms. Collins testified that in late November, she attempted to schedule a physical therapy appointment but was told that "workers' comp had cut off the physical therapy ... [and] they wouldn't pay for them."
On December 1, 1995, Ms. Collins was again evaluated by Dr. Sylvest who was of the opinion that she could return to light-duty work. She was instructed not to lift more than ten pounds and advised that she could work five hours per day and up to seven days a week. Ms. Collins indicated that she was unable to do light-duty work because of the pain. She reported this to her employer and also to Dr. Sylvest. When Dr. Sylvest examined Ms. Collins on December 14, 1995, he prescribed Relafen and advised her to return in four weeks. On January 8, 1996, Dr. Sylvest released Ms. Collins to "full work duty." At the time, Ms. Collins was still suffering from low back pain and had advised Dr. Sylvest that she wanted an MRI scan. On January 17, 1996, Dr. Sylvest ordered an MRI scan and again restricted Ms. Collins from any work pending the results of the MRI. Ms. Collins underwent an MRI on January 23, 1996, and the results revealed dehydration of discs at several levels and minimal bulging at L3-L4, L4-L5, and L5-S1. She returned to see Dr. Sylvest the following day and was again released to "full work duty." According to Ms. Collins, Dr. Sylvest told her that there was nothing else he could do for her.
Ms. Collins attempted to return to her job as store manager, but after one week of work, she realized that she "just could not do it ." She notified the insurance company that she "was still hurting and... needed to see a doctor." The insurance company asked, "Would you go see our doctor for a second opinion?" Ms. Collins agreed, and on February 15, 1996, she saw Dr. Lawrence J. Messina who was of the opinion that she had been "poorly rehabilitated." In a letter to the insurance company dated February 15, 1996, Dr. Messina stated:
I would think that we are probably just dealing with somebody who is poorly *1213 rehabilitated. I think that with appropriate rehabilitation she could return to gainful employment and do what she did previously.
My diagnosis would be lumbar strain, poorly rehabilitated.
In regard to disability, I think that within six to eight weeks she should be able to return to her regular duty. I think she could return to light duty after two weeks. I don't think any additional testing would be indicated. I don't think she should have any residual impairment as the result of this injury. (Emphasis ours.)
Dr. Messina prescribed physical therapy for Ms. Collins as follows: "Instruct in proper back hygiene, extension exercise. Strengthen lower abdominal and gluteals. Stretch lumbodorsal fascia, hamstrings. Ultrasound to right shoulder. External rotation exercises right shoulder."
On February 19, 1996, just four days after seeing Dr. Messina, Ms. Collins learned from the insurance company that her benefits had been terminated. She subsequently contacted her employer's home office and was told that she "had exhausted all [her] options to see doctors, that [the insurance company] wouldn't pay for any more." She was advised that she would have to use her own insurance for any further treatment. Because she did not have insurance, Ms. Collins was unable to get the physical therapy that Dr. Messina had prescribed.[2]
In the summer of 1996, Ms. Collins returned to Dr. Walker for treatment. Dr. Walker prescribed pain medication and referred Ms. Collins to Dr. Steven M. Bailey for a neurosurgical evaluation. Dr. Bailey saw Ms. Collins on December 16, 1996, at which time Ms. Collins complained of constant low back and left leg pain associated with a work-related accident on September 14, 1995. Dr. Bailey opined that there was no objective neurological dysfunction and recommended a functional capacity evaluation.
On May 28, 1997, Ms. Collins was seen by Dr. Susan L. Scarberry, a neurologist who worked with Dr. Bailey. Dr. Scarberry reported that Ms. Collins was suffering from chronic neck and low back pain as well as chronic headaches. Dr. Scarberry found "some reflex asymmetry in the left lower extremity" and ordered an EMG/ NCV study for the evaluation of a peripheral neuropathy. The tests were preformed on June 13, 1997, and revealed a sensorimotor neuropathy.[3]
The record does not contain any further notes from either Dr. Bailey or Dr. Scarberry, and there is no indication whether Ms. Collins sought any additional treatment after June of 1997. However, at the time of the trial of this matter, October 21, 1998, Ms. Collins testified as follows:
I'm having spasms real bad. Some days you do feel better than other days, but there is still a lot of pain. There is something that they haven't found. There is something wrong. I didn't hurt like this before. I did all this stuff. It was just me. I took care of the house, the yard, the automobile, the job, the kids, the grand kids. I have been on my own for twenty-something years. All of a sudden, I can't do hardly anything. I want my life back like it was.
On February 13, 1997, Ms. Collins filed a disputed claim for compensation against her former employer, Family Dollar Stores, Inc. ("Family Dollar"). The matter *1214 proceeded to trial before the workers' compensation judge on October 21, 1998, at which time the parties stipulated that Ms. Collins was injured on September 14, 1995, while in the course and scope of her employment with Family Dollar. The parties further agreed that the only issue to be decided by the court was "whether Ms. Collins could return to work either in a limited capacity or full work duty, and at what time she could do that." The workers' compensation judge rendered judgment on November 13, 1998, finding as follows:
1. Jo Ann Collins' claim for indemnity benefits is denied.
2. Jo Ann Collins['] claim for penalties and attorney fees is denied.
3. The defendant is ordered to pay for an evaluation by Dr. Lawrence Messina and if physical therapy is prescribed to pay for the physical therapy.
It is from this judgment that Ms. Collins has appealed, raising three assignments of error: 1) That she is entitled to a reinstatement of her weekly benefits and past-due benefits, together with interest, and penalties and attorney fees because her employer was arbitrary and capricious in its termination of her benefits; 2) That she is due reimbursement of her out-of-pocket medical expenses (plus interest) incurred after her benefits were terminated and is entitled to penalties and attorney fees for her employer's failure to provide necessary medical benefits; 3) That she is entitled to additional vocational rehabilitation.

TEMPORARY TOTAL DISABILITY BENEFITS
In assignment of error number one, Ms. Collins argues that Family Dollar was arbitrary and capricious in its decision to terminate her benefits while they were in "possession of a medical report, prepared by their choice of physician, showing that she was disabled until the completion of an `appropriate rehabilitation' program." Ms. Collins contends that not only is she entitled to the reinstatement of her weekly benefits, but also Family Dollar is subject to penalties and attorney fees pursuant to La. R.S. 23:1201 F and 23:1201.2 for its arbitrary, capricious, and unreasonable termination of her benefits. Based on our extensive review of the record, we agree with Ms. Collins.
Factual findings in a workers' compensation case (such as whether a claimant is entitled to temporary total disability benefits) are subject to the manifest error or clearly wrong standard of appellate review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, p. 7 (La.7/1/97), 696 So.2d 551, 556. As an appellate court, we cannot set aside the factual findings of the workers' compensation judge unless we determine that there is no reasonable factual basis for the findings and the findings are clearly wrong (manifestly erroneous). Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993).
Benefits for temporary total disability shall be awarded only if a claimant proves by clear and convincing evidence that he is physically unable to engage in any employment. La. R.S. 23:1221(1)(c). A claimant is entitled to temporary total disability benefits if he shows he is disabled at the time of trial and is still undergoing medical testing with an indefinite recovery period, yet it appears reasonably certain he will be able to engage in gainful occupation within a foreseeable period of time. Gordon v. Sandersons Farms, 96-1587, p. 8 (La.App. 1 Cir. 5/9/97), 693 So.2d 1279, 1285. A demand for temporary total disability benefits must fail in the absence of clear and convincing evidence that the claimant is physically unable to engage in any employment. Augustus v. St. Mary Parish School Board, 95-2498, p. 4 (La. App. 1 Cir. 6/28/96), 676 So.2d 1144, 1149.
Applying the above analysis to the present case, it is readily apparent that Ms. Collins satisfied her burden of proving by clear and convincing evidence that because of the work-related injury she sustained, *1215 she was physically unable to engage in any employment. There is no reasonable factual basis in the record for the decision of the workers' compensation judge to deny Ms. Collins' claim for benefits. Thus, as the judge was manifestly erroneous in this regard, we must reverse that portion of the judgment and reinstate Ms. Collins' benefits.
When Ms. Collins last saw Dr. Sylvest on January 24, 1996, she was released to return to "full work duty." Ms. Collins worked for one week as store manager and then had to stop working because she "was still hurting." After notifying the insurance company, Ms. Collins was sent to Dr. Messina, a doctor chosen by the insurance company, for a second opinion. Ms. Collins saw Dr. Messina on February 15, 1996, at which time Dr. Messina opined that she had been "poorly rehabilitated." Dr. Messina prescribed physical therapy for Ms. Collins and indicated that "with appropriate rehabilitation she could return to gainful employment and do what she did previously." However, Ms. Collins was unable to get the necessary therapy because her benefits were terminated just four days after her initial visit to Dr. Messina.
According to June Thibodaux, a registered nurse/nurse case manager with Professional Medical Case Management who was hired by the insurance company to manage Ms. Collins' case, the insurance company was well aware of the status of Ms. Collins' case after the February 15, 1996 visit to Dr. Messina. Nevertheless, on February 22, 1996, Ms. Thibodaux was contacted by the insurance adjuster and told to close her file on Ms. Collins because she had been released to full duty. The file was closed on February 26, 1996, but was reopened on March 15, 1996, at the request of the insurance adjuster. At that time, the insurance adjuster told Ms. Thibodaux about Dr. Messina's report and requested that she get additional information regarding what physical therapy Ms. Collins had undergone. Ms. Thibodaux forwarded this information and a copy of Dr. Messina's report to Dr. Sylvest, asking whether he would agree with Dr. Messina's recommendation for additional therapy. Dr. Sylvest responded, "P.T. is fine but I have already placed Mrs. Collins in therapy for a prolonged period of time."
According to Ms. Thibodaux, she notified the insurance company on three different occasions that Dr. Messina and Dr. Sylvest were in agreement that Ms. Collins was in need of additional therapy. Ms. Thibodaux received no response from the insurance company, thus prompting her to close her file in August 1996. It was not until May 8, 1998, that she received a call from counsel for the insurance company and later learned that the insurance company had their own nurse case manager. At the time of her deposition on September 30, 1998, Ms. Thibodaux was not aware that Ms. Collins' benefits had been terminated effective February 19, 1996.
Family Dollar asserts on appeal that Ms. Collins failed to meet her burden of proof that she was entitled to benefits for temporary total disability. In support of this position, Family Dollar notes, "Ms. Collins admitted at trial she walked in her yard, gardened, and had been babysitting." (Emphasis in original.) Family Dollar further argues that it "was not unreasonable in relying on the word of the treating physician rather than on the word of a doctor who had seen Ms. Collins one time and determined she was `poorly rehabilitated'." We disagree.
We recognize the general jurisprudential rule that a treating physician's opinion is given more weight than a non-treating physician. See Ross v. Remediation Services of Louisiana, 97-2102, p. 8 (La.App. 1 Cir. 5/15/98), 714 So.2d 218, 223. However, in the instant case, the insurance company suggested that Ms. Collins receive a second opinion from their doctor and then did not even bother to consider his opinion before terminating her benefits. Furthermore, Ms. Collins' treating physician, who had previously released *1216 her to "full work duty," agreed with the additional therapy prescribed by Dr. Messina, and the insurance company was notified of this agreement several times by Ms. Thibodaux. Dr. Messina was clear in his report to the insurance company that Ms. Collins was in need of further therapy, and that with "appropriate rehabilitation she could return to gainful employment and do what she did previously."
As noted by this court in Gordon v. Sandersons Farms, 96-1587 (La.App. 1 Cir. 5/9/97), 693 So.2d 1279, an employer has a continuing duty to fully investigate an employee's medical status before terminating benefits.
[A]n injured employee's compensation benefits may not be terminated based on inconclusive medical reports. An employer or insurer must make reasonable efforts to ascertain the employee's exact medical condition before terminating benefits. Termination of benefits may be considered arbitrary when it appears further medical information was required to make an exact determination of the employee's condition.
This obligation is continuing in nature. If an insurer or employer first receives an optimistic medical report, but later receives information indicating the possibility of continuing disability, it may not blindly rely on the earlier report to avoid penalties and attorney fees.
Gordon, 96-1587 at 10-11, 693 So.2d at 1286-87 (footnotes omitted).
In this case, Family Dollar failed to make any effort to ascertain Ms. Collins' exact medical condition before terminating her benefits. Although Family Dollar was aware of Dr. Messina's recommendation for additional therapy and Dr. Sylvest's agreement therewith, it chose not to provide Ms. Collins with this necessary rehabilitation, but instead, terminated her benefits.[4] Family Dollar was clearly arbitrary and capricious in terminating Ms. Collins' benefits. Thus, we conclude that Ms. Collins is entitled to the reinstatement of her weekly benefits in the amount of $333.00, retroactive to the date of termination and including interest thereon, until she has received the necessary rehabilitation and is able to return to work.

MEDICAL EXPENSES
In assignment of error number two, Ms. Collins alleges that the workers' compensation judge was manifestly erroneous in denying her claim for reimbursement of her out-of-pocket medical expenses. The workers' compensation judge was silent on this issue. Neither the judgment nor the written reasons for judgment contain any reference to Ms. Collins' out-of-pocket expenses. Silence in a judgment as to any issue raised by the pleadings and on which evidence has been offered is to be taken as a rejection of that demand. Harmon v. Schamberger, 536 So.2d 579, 581 n. 1 (La.App. 1 Cir.1988); Hendrix v. Hendrix, 457 So.2d 815, 818 (La.App. 1 Cir. 1984).
As previously discussed, after Ms. Collins' benefits were terminated, she returned to see Dr. Walker in the summer of 1996. Dr. Walker referred her to a neurosurgeon, Dr. Bailey, who subsequently referred her to a neurologist, Dr. Scarberry. In a letter dated October 17, 1996, addressed to Family Dollar's insurance company, Dr. Walker explained his findings regarding Ms. Collins' medical status at the time:
Examination of Ms. Collins on 6-14-96 revealed a questionable positive straight leg test on the left. I was told that her MRI report showed no herniation, but questionable bulging of the disc. Ms. Collins told me that she was having migraine headaches and gave a family history of her mother having migraine headaches. Ms. Collins also told me *1217 that she had had these headaches in the past, but stated that they were not migraine. I was told that these headaches are not one-sided, but were on both sides. Due to all of the above, it was my recommendation that she see a Neurosurgeon.
In connection with this treatment, Ms. Collins paid a total of $989.00 out-of-pocket, including $50.00 to Dr. Walker and $939.00 to the Neuromedical Center for treatment by Dr. Bailey and Dr. Scarberry.
An employer has a statutory duty to furnish all necessary medical treatment caused by a work-related injury. La. R.S. 23:1203 A. The right to reimbursement for medical expenses is separate and distinct from the right to compensation. Whether the claimant is entitled to medical benefits is a factual question, the resolution of which may not be disturbed by the appellate court in the absence of manifest error or unless clearly wrong. Parfait v. Gulf Island Fabrication, Inc., 97-2104, p. 9 (La.App. 1 Cir. 1/6/99), 733 So.2d 11, 19.
To recover medical expenses under La. R.S. 23:1203, the claimant must prove by a preponderance of the evidence that the expenses are reasonably necessary for treatment of a medical condition caused by the work injury. Patterson v. Long, 96-0191, p. 11 (La.App. 1 Cir. 11/8/96), 682 So.2d 1327, 1334, writ denied, 96-2958 (La.2/7/97), 688 So.2d 499. An award of medical expenses must be limited to those expenses shown to have been made necessary by the work-related accident. An injured employee is not entitled to recover for medical expenses where he or she fails to substantiate a claim. Starks v. Universal Life Insurance Company, 95-1003, p. 5 (La.App. 1 Cir. 12/15/95), 666 So.2d 387, 391, writ denied, 96-0113 (La.3/8/96), 669 So.2d 400. Nonetheless, when a claimant alleges that he or she incurred medical expenses and that allegation is supported by a bill, unless there is sufficient contradictory evidence or reasonable suspicion that the bill is unrelated to the accident, it is sufficient to support the inclusion of the item in the judgment. Augustus, 95-2498 at 15, 676 So.2d at 1155.
Based on our review of the record, we find that the workers' compensation judge was manifestly erroneous in this regard. There was no evidence offered by Family Dollar that the treatment by Drs. Walker, Bailey, and Scarberry was not "necessary for treatment of a medical condition caused by the work injury." Thus, Ms. Collins is entitled to reimbursement in the amount of $989.00 for these expenses.

VOCATIONAL REHABILITATION SERVICES
In her final assignment of error, Ms. Collins argues that she is entitled to the completion of the vocational rehabilitation services that were begun in June 1998. As with the reimbursement of medical expenses, the workers' compensation judge did not address this issue in either the judgment or the written reasons for judgment. Thus, we must consider the judge's silence on this issue as a rejection of Ms. Collins' claim for vocational rehabilitation services. See Harmon, supra. For the reasons that follow, we find that the judge erred in denying this claim and conclude that Ms. Collins is entitled to vocational rehabilitation services.
Pursuant to La. R.S. 23:1226 A, an employee is entitled to vocational rehabilitation services if he suffers an injury that precludes his earning wages equal to or in excess of his pre-injury wage. The stated goal of rehabilitation is "to return a disabled worker to work, with a minimum of retraining, as soon as possible after an injury occurs." La. R.S. 23:1226 B(1). In furtherance of this goal, La. R.S. 23:1226 B(1)(a)-(g) lists a hierarchy of seven rehabilitation options and mandates that the first appropriate option shall be chosen: (a) return to same position; (b) return to a modified position; (c) return to a related occupation suited to the claimant's education and marketable skills; (d) on-the-job *1218 training; (e) short-term retraining program (less than twenty-six weeks); (f) long-term retraining program (more than twenty-six weeks but not more than one year); (g) self-employment.
According to the record, Paula Brown, a licensed Rehabilitation Counselor, was contacted by Family Dollar in the summer of 1998 to conduct a vocational assessment on Ms. Collins. As pointed out by Ms. Collins in brief, this rehabilitation was apparently initiated in anticipation of the trial date that had been set for October 21, 1998. Ms. Brown, who was accepted as an expert in vocational rehabilitation counseling, testified at the trial of this matter. She stated that the way in which she received this case was unusual. Ms. Brown stated that normally she would get a case when it is "approaching, or may have approached maximum medical improvement." Based on her one meeting with Ms. Collins and her review of the pertinent medical information, Ms. Brown opined that Ms. Collins was "definitely marketable" and "had numerous transferable skills." Ms. Brown testified that she had completed a labor market survey to determine the available positions for Ms. Collins based on her abilities. Ms. Brown indicated that she had found "four management type positions" that were currently available. She acknowledged, however, that she did not know whether any of these positions would be appropriate for Ms. Collins as she was still in the process of gathering all of the information and sending it to the physicians for their review and approval.
We have previously determined that Ms. Collins is entitled to the reinstatement of her benefits and is in need of the rehabilitation before she can return to work. Likewise, the workers' compensation judge found it necessary that Ms. Collins be evaluated by Dr. Messina to determine whether Ms. Collins was still in need of physical therapy. The evidence indicates that Ms. Collins is unable to earn wages equal to or in excess of what she was earning prior to this injury. Thus, it follows that Ms. Collins is clearly entitled to vocational rehabilitation as provided for in La. R.S. 23:1226 A.

STATUTORY PENALTIES
A review of the judgment and written reasons for judgment indicates that the workers' compensation judge denied Ms. Collins' claim for penalties and attorney fees, finding that Family Dollar had not acted in an arbitrary or capricious manner in terminating her benefits. On appeal, Ms. Collins asserts that she is entitled to penalties and attorney fees for Family Dollar's failure to pay compensation benefits and failure to pay medical benefits. We agree with Ms. Collins.
The statutory right to penalties and attorney fees is set forth in La. R.S. 23:1201 F and La. R.S. 23:1201.2, which provide, in pertinent part, as follows:
§ 1201. Time and place of payment; failure to pay timely; failure to authorize; penalties and attorney fees
F. Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim.
§ 1201.2. Discontinuance of payment; attorney fees
Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney fees for the prosecution and collection of such claims.
*1219 In Parfait, 97-2104 at 16-17, 733 So.2d at 24, this court discussed when an award of penalties and attorney fees was warranted.
Penalties are not to be assessed when the employee's right to such benefits has been reasonably controverted by the employer or insurer. A claim is reasonably controverted if the employer or insurer had sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant. An employee has the burden of proving his entitlement to statutory penalties.
An award of attorney fees is appropriate when the employer and/or insurer has acted arbitrarily, capriciously, or without probable cause in failing to pay workers' compensation benefits. The applicable statute requires a finding that the defendant acted arbitrarily, capriciously, or without probable cause before attorney fees can be assessed. A refusal to pay compensation will not be held to be arbitrary or capricious when this decision is based on competent medical advice. A determination of whether a denial of compensation benefits is arbitrary, capricious, or without probable cause depends primarily on the facts existing and known at the time that benefits are denied. The realistic standard for making this determination is whether there was a "reasonable" basis for a dispute as to the employee's entitlement to benefits.
These statutes allowing recovery of attorney fees and penalties are penal in nature and must be strictly construed. Whether the refusal to pay or the discontinuation of benefits warrants the imposition of penalties and attorney fees is a factual question which will not be disturbed upon review in the absence of manifest error. (Citations omitted.)
We have thoroughly reviewed the record and the evidence in this case and conclude that Family Dollar's discontinuation of Ms. Collins' benefits was arbitrary, capricious, and unreasonable in light of the medical evidence that was present. Thus, Ms. Collins was clearly entitled to penalties and attorney fees pursuant to La. R.S. 23:1201 F and 23:1201.2. Accordingly, we award Ms. Collins penalties in the amount of $2,000.00 for Family Dollar's failure to pay compensation benefits and $2,000.00 for Family Dollar's failure to pay medical benefits. Finally, Ms. Collins is awarded $10,468.75 in attorney fees.[5]

DECREE
For the above and foregoing reasons, the portion of the judgment rendered by the workers' compensation judge that denies Ms. Collins' claim for compensation benefits and penalties and attorney fees is reversed. We affirm that portion of the judgment whereby Family Dollar is ordered to pay for an evaluation by Dr. Messina and for any necessary physical therapy. Judgment is hereby rendered reinstating Ms. Collins' weekly benefits in the amount of $333.00, retroactive to the date of termination and including interest thereon, until she has received the necessary rehabilitation and is able to return to work. Further, judgment is rendered in favor of Ms. Collins as follows: 1) judgment in the amount of $989.00 for the medical expenses that she paid after her benefits were wrongfully terminated; 2) judgment in the amount of $2,000.00 in penalties for Family Dollar's failure to pay compensation benefits; 3) judgment in the amount of $2,000.00 in penalties for Family Dollar's failure to pay medical benefits; and 4) judgment in the amount of $10,468.75 in attorney fees. All trial court costs, including but not limited to the amount of $1,099.70, and all costs associated with this appeal are assessed against *1220 defendant-appellee, Family Dollar Stores, Inc.[6]
REVERSED IN PART, AFFIRMED IN PART AND RENDERED.
NOTES
[1] Judge William F. Kline, Jr., retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] According to Ms. Collins, the insurance company paid for the February 15 office visit to Dr. Messina but would not pay for any further treatment. Ms. Collins saw Dr. Messina again on November 19, 1996, at which time Dr. Messina was still of the opinion that Ms. Collins needed rehabilitation. He provided Ms. Collins with another prescription for physical therapy, but again, Ms. Collins was unable to receive the necessary therapy because of the lack of insurance coverage.
[3] According to the record, Ms. Collins paid $989.00 out-of-pocket for the treatment she received from Drs. Walker, Balley, and Scarberry in 1996 and 1997.
[4] We note that although Family Dollar now relies on Dr. Sylvest's January 8, 1996 report whereby he released Ms. Collins to "full work duty" to justify the termination of benefits, it was not until February 19, 1996, that the termination of benefits became effective.
[5] This amount includes an award for the original 106.25 hours that Ms. Collins' counsel spent on this case and an additional award of $2,500.00 for the time spent on this appeal.
[6] Trial court costs in the amount of $1,099.70 were calculated as follows: $550.00 for Dr. Messina's deposition, $201.70 court reporter charge for Dr. Messina's deposition, and $348.00 court reporter charge for June Thibodaux's deposition. Both of these depositions were introduced into evidence at the trial of this matter.