859 So.2d 22 (2003)
Roxanne IVY
v.
V'S HOLDING COMPANY.
No. 2002 CA 1927.
Court of Appeal of Louisiana, First Circuit.
July 2, 2003.
*25 Dennis A. Pennington, Baton Rouge, for Plaintiff-Appellee, Roxanne Ivy.
Matthew W. Tierney, Robert D. Hoover, Baton Rouge, for Defendant-Appellant, V's Holding Company.
Before: CARTER, C.J., WHIPPLE, and CIACCIO,[1] JJ.
CARTER, C. J.
In this workers' compensation case, V's Holding Company (defendant) appeals a judgment rendered by the Office of Workers' Compensation Administration awarding indemnity benefits, medical benefits, penalties, attorney's fees, costs and interest to its former employee, Roxanne Ivy (claimant).[2] For the following reasons, we reverse in part and affirm in part.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY
It is undisputed that claimant was injured in an accident on January 4, 2000, during the course and scope of her employment as a telephone collector with defendant. Claimant fell on her left side when a spring-loaded door closed against her as she was leaving the "break" room. Claimant alleges that she suffered immediate pain in her left ankle and leg that persisted and subsequently developed into back pain with radiating leg pain. She eventually had two surgical procedures for repair of a herniated disc in her lumbar spine at the L4-5 level. It is undisputed that claimant had a long history of a pre-existing degenerative back condition, documented by a pre-accident MRI revealing a bulging disc in her lumbar spine at the L4-5 level. Claimant alleges that the accident aggravated her pre-existing back condition, making her back surgeries necessary.
Approximately one week after the accident, on January 13, 2000, claimant sought medical treatment for left leg pain that she had been suffering since the fall at work. She saw her family physician, Dr. Christine L. Smith, who had treated her for a variety of health conditions, including back pain and sporadic leg pain, since 1998. Claimant complained of bruising on her left ankle and left leg pain that she related to her fall at work, but she made no mention of back pain at that visit or at her next visit on January 20, 2000. Claimant did not complain to Dr. Smith about back pain related to the work accident until a January 29, 2000 visit. Initially, Dr. Smith prescribed pain medication and advised *26 light-duty work for a few days. After several visits for persistent leg pain that was moving up claimant's leg, Dr. Smith referred claimant to an orthopaedic surgeon, Dr. Janet E. Lewis, for an evaluation. Dr. Lewis diagnosed a contusion and recommended physical therapy; however, claimant never attended the physical therapy prescribed by Dr. Lewis.
Claimant continued to treat with Dr. Smith for leg pain and bronchitis on March 6 and 27, 2000 and April 18, 2000. At each visit, Dr. Smith prescribed pain medication for claimant, although she questioned claimant several times about her possible over use of narcotic medications. Dr. Smith's notes specifically mention back pain only twice after the date of the accident; once on January 29 and again on May 8, 2000. The notes on the other dates consistently refer to complaints of significant leg pain. On June 26, 2000, Dr. Smith referred claimant to a neurosurgeon for an evaluation of the radicular, burning leg pain. Claimant's appointment with the neurosurgeon was scheduled for August 2000, and in the meantime, claimant's leg and back pain escalated. On July 7, 2000, Dr. Smith admitted claimant into the hospital for testing in connection with severe leg pain and weakness, back pain, and foot drop (an indication that the nerves in the left leg were compromised). A neurosurgeon, Dr. Horace L. Mitchell, saw claimant in the hospital, and a new MRI revealed a large herniated disc at the L4-5 level. Claimant underwent "urgent" microdiscectomy surgery on July 9, 2000, for the herniated disc.
On August 24, 2000, claimant notified the workers' compensation claims adjuster for defendant, Ms. Maggie Blanchard, for the first time that she had undergone back surgery related to her January 4, 2000 injury at work. Until this point, Ms. Blanchard had handled claimant's file as a medical-payment claim, and she had not investigated any of claimant's medical records, because other than Dr. Lewis's report and bill, she had no other doctor reports or bills in her file. Claimant requested that defendant pay her medical expenses connected to the surgery and workers' compensation indemnity benefits.[3] Ms. Blanchard refused payment of any medical expenses or indemnity benefits related to the surgery because she believed claimant's back surgery was due to a pre-existing condition that was not related to the accident at work.
Ms. Blanchard transferred claimant's claim to another adjuster, Ms. Regina Patterson, who handled claims involving time off from work. Ms. Patterson immediately requested claimant's medical records to begin an investigation into the claim; however, she also decided not to pay indemnity and medical benefits on the claim. On December 27, 2000, claimant filed a disputed claim for compensation benefits claiming that the accident had aggravated a pre-existing back condition necessitating her back surgery. Dr. Smith's deposition was taken on August 1, 2001, and Dr. Mitchell's deposition was taken on December 11, 2001. Defendant did not request that claimant have an independent medical examination and claimant did not seek medical treatment from any other physicians. On May 17, 2001, claimant underwent a second stabilization surgery, an anterior lumbar fusion at the L4-5 level, *27 which she alleged was also related to the accident.
This case went to trial before the workers' compensation judge (WCJ) on February 13, 2002. The primary issue at trial was what part of the body did claimant injure in the accident. The only witnesses at trial were claimant, Ms. Blanchard, Ms. Patterson, and Dr. Smith. The testimony of Dr. Mitchell, the neurosurgeon who performed both surgeries on claimant, was submitted by way of deposition. The WCJ determined that the accident aggravated claimant's pre-existing back condition, that the subsequent surgeries were related to the accident, and that claimant was entitled to indemnity benefits, medical benefits, penalties, attorney's fees and costs. Defendant appeals.

LAW AND ANALYSIS
Causation and Expert Testimony
Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. In applying this standard, the appellate court must determine not whether the trier-of-fact was right or wrong, but whether the fact-finder's conclusion was a reasonable one. Where there are two permissible views of the evidence, a fact-finder's choice between them can never be manifestly erroneous or clearly wrong. Thus, if the fact-finder's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier-of-fact, it would have weighed the evidence differently. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, pp. 7-8 (La.7/1/97), 696 So.2d 551, 556.
The claimant-employee bears the burden of establishing a causal link between the work accident and the claimed disability. A pre-existing disease or infirmity of a claimant does not automatically disqualify a compensation claim if the work-related injury aggravated, accelerated, or combined with the disease or infirmity to produce death or disability for which compensation is claimed. A disabled claimant's work-related injury is presumed to have been aggravated, accelerated or combined to produce the disability if the claimant proves that before the work-related injury he had not manifested disabling symptoms, but that commencing with the work injury the disabling symptoms appeared and there is medical or circumstantial evidence indicating a reasonable possibility of causal connection between the work injury and the activation of the disabling condition. Once the claimant has established the presumption of causation, the opposing party bears the burden of producing evidence and persuading the trier-of-fact that it is more probable than not that the work-related injury did not accelerate, aggravate or combine with the pre-existing disease or infirmity to produce the disability. Dawson v. City of Slidell, 2000-2265, pp. 2-3 (La.App. 1 Cir. 12/28/01), 804 So.2d 902, 903-904, writ denied, XXXX-XXXX (La.4/12/02), 813 So.2d 406.
After a thorough review of the record, we cannot say that the WCJ erred in finding that claimant's accident at work aggravated her pre-existing back condition to the point that she needed two back surgeries. The record reasonably supports this conclusion given that claimant and her treating physician, Dr. Smith, both testified that claimant's persistent symptoms of radiating leg pain after the accident were different than before the accident. Claimant had suffered a few sporadic instances of leg pain before the accident, but it had always subsided. Dr. Smith clearly testified that claimant's radicular *28 pain and herniated disc were more probably than not caused by the acute injury on January 4, 2000, when claimant fell at work. Dr. Smith also testified that claimant's progression of persistent leg and back pain was consistent with a disc herniation and nerve-root-impingement injury. Dr. Smith stated that the injury was evidenced on the post-accident MRI and it was different from the pre-accident MRI that revealed only a broad-based disc bulge. Dr. Smith further testified that claimant obtained relief from her leg pain after the July 9, 2000 surgery, but continues to suffer from back pain. Defendant failed to produce any evidence to contradict Dr. Smith's testimony or to demonstrate any intervening trauma or cause for claimant's herniated disc.
Defendant argues that the WCJ erred in permitting Dr. Smith to testify as an expert and to opine as to causation in this case. Generally, a treating physician's opinion is given more weight than a non-treating physician, and the testimony of a specialist is given more weight than a general practitioner. Ponthier v. Vulcan Foundry, Inc., 95-1343, pp. 3-4 (La.App. 1 Cir. 2/23/96), 668 So.2d 1315, 1317. The WCJ accepted Dr. Smith as an expert in family practice and specifically found that Dr. Smith had more than enough expertise to form an opinion as to the causation of claimant's injury. A trial court has great discretion in determining whether to qualify a witness as an expert, and such discretion will not be disturbed on appeal in the absence of manifest error. Lemaire v. CIBA-GEIGY Corp., 99-1809, p. 16 (La. App. 1 Cir. 6/22/01), 793 So.2d 336, 349, writ denied, 2001-2153 (La.11/16/01), 802 So.2d 608. A trial court may accept or reject in whole or in part the opinion expressed by an expert. Hart v. Riverside Medical Center, 2001-2428, p. 4 (La.App. 1 Cir. 11/8/02), 835 So.2d 771, 773. The effect and weight to be given expert testimony is within the broad discretion of the trial judge. Thornton ex rel. Laneco Const. Systems, Inc. v. Lanehart, 97-2871, p. 5 (La.App. 1 Cir. 12/28/98), 723 So.2d 1127, 1130, writ denied, 99-0177 (La.3/19/99), 740 So.2d 115. The rule that questions of credibility are for the trier-of-fact applies to the evaluation of expert testimony, unless the stated reasons of the expert are patently unsound. Lirette v. State Farm Ins. Co., 563 So.2d 850, 853 (La.1990).
The WCJ found that because Dr. Smith extensively treated claimant both before and after the accident, she was in a position to see the progression and change in claimant's symptoms. Furthermore, the deposition testimony of Dr. Mitchell, the specialist in this instance, did not contradict Dr. Smith's testimony. Dr. Mitchell had no record of claimant's history because he saw her as a consultation in the hospital before the first surgery. However, Dr. Mitchell expressed no doubts as to Dr. Smith's opinion regarding causation based upon Dr. Smith's treatment of claimant both before and after the accident. Thus, we find the jurisprudential favoring of a specialist's testimony is irrelevant in this case because there is no difference of opinion between the two physicians. It is the function of the WCJ to assess the weight to be accorded both the lay and the medical testimony, and the court may accept or reject the opinion of a medical expert depending upon what impression the qualifications, credibility, and testimony of that expert make on the court. Davison v. Horseshoe Casino, Inc., 31,166, pp. 4-5 (La.App. 2 Cir. 10/28/98), 720 So.2d 785, 787, writ denied, 98-2950 (La.1/29/99), 736 So.2d 833. Considering the record before us and the complete lack of contradictory evidence, we conclude that the WCJ did not commit manifest error in *29 finding that claimant's pre-existing degenerative disc condition was aggravated by the accident at work.
Penalties and Attorney's Fees
Defendant also alleges error on the part of the WCJ in awarding penalties and attorney's fees for its failure to pay indemnity benefits and medical benefits because it argues that the claim was reasonably controverted.[4] Determination of whether an employer's refusal to pay workers' compensation benefits warrants the imposition of penalties and attorney's fees is a factual question that will not be disturbed on appeal in the absence of manifest error. Wilson v. St. Mary Community Action, 2000-2106, p. 8 (La.App. 1 Cir. 12/28/01), 803 So.2d 1106, 1112. The assessment of penalties and attorney's fees is determined by inquiring whether the employer or its insurer has "reasonably controverted" the compensation claims or determining if the nonpayment resulted from conditions over which the employer or its insurer had no control. See LSA-R.S. 23:1201(F)(2).
In the instant case, the WCJ found that once Dr. Smith's deposition testimony was taken in August 2001 and Dr. Smith related claimant's back surgery to the accident, that defendant no longer had reason to deny payment of claimant's benefits. The WCJ found that before Dr. Smith's deposition was taken, defendant reasonably denied the claim because the medical records did not link the accident with an aggravation of the pre-existing back condition. Before that time, the medical records simply documented a pre-existing back condition and a bruised and painful leg after the work accident. It was Dr. Smith's deposition testimony that clearly linked claimant's back injury and surgery to the work accident. Defendant never possessed any medical evidence to the contrary.
An employer has a continuing duty to fully investigate an employee's medical status before terminating/denying benefits. Compensation benefits may not be terminated/denied based on inconclusive medical reports. An employer or insurer must make reasonable efforts to ascertain the employee's exact medical condition before terminating/denying benefits. Termination/denial of benefits may be considered arbitrary when it appears further medical information was required to make an exact determination of the employee's condition. This obligation is continuing in nature. If an insurer or employer first receives an optimistic medical report, but later receives information indicating the possibility of continuing disability, it may not blindly rely on the earlier report to avoid penalties and attorney's fees. See Collins v. Family Dollar Stores, Inc., 99-0622, p. 8 (La. App. 1 Cir. 5/12/00), 760 So.2d 1210, 1216, writs denied, 2000-2356, 2000-2363 (La.11/13/00), 773 So.2d 727; Gordon v. Sanderson Farms, 96-1587, pp. 10-11 (La.App. 1 Cir. 5/9/97), 693 So.2d 1279, 1286-1287.
Both claims adjusters that worked on claimant's file admitted that they did not conduct an investigation into claimant's injury before they received notice of the first surgery in August 2000 because they were not aware that claimant had such a serious claim. They treated the claim as a medical-payment file only. There had been such a time lapse between the initial medical benefits paid in connection with Dr. Lewis's orthopaedic examination and some of Dr. Smith's prescriptions, that Ms. Blanchard considered the file to be inactive.
After notification of claimant's surgery and the claim for payment, Ms. Patterson *30 testified that she began to gather claimant's medical records in order to investigate the claim. One year after Ms. Patterson began work on the file, Dr. Smith's deposition was taken. We agree with the WCJ's conclusion that it was at this point that Ms. Patterson should have been aware that Dr. Smith related claimant's back surgery to the work accident.[5] However, despite knowledge of Dr. Smith's deposition testimony, Ms. Patterson maintained the opinion that claimant had sustained only a bruised ankle and leg in the work accident and that claimant's back surgery was not related. Ms. Patterson did not seek the opinion of any other medical expert to support the continued denial of claimant's benefits. Ms. Patterson's only explanation for the continued denial of benefits was that the claim was in litigation and that she would rely on the court to decide the issue. Based upon our review of the evidence, we cannot say the WCJ was manifestly erroneous in the decision to award penalties and attorney's fees in this instance.
Forfeiture of Benefits
Defendant further argues that the WCJ erred in failing to find that claimant forfeited her workers' compensation benefits under LSA-R.S. 23:1208 because she made false statements and misrepresentations for the purpose of obtaining benefits.[6] However, the burden of proof requires more than a mere showing of inconsistent statements or inadvertent omissions by the claimant. Sevin v. Greenbriar Nursing Home, 2000-2794, p. 4 (La.App. 1 Cir. 2/15/02), 807 So.2d 1179, 1181. The issue of whether an employee forfeited her workers' compensation benefits is one of fact, which is not to be reversed on appeal, absent manifest error. Hull v. Fluker Farms, XXXX-XXXX, p. 6 (La.App. 1 Cir. 5/11/01), 787 So.2d 535, 539, writ denied, 2001-2291 (La.11/16/01), 802 So.2d 612.
We find no manifest error in the WCJ's determination that the claimant's inconsistent statements regarding her medical history and her ambiguous answer on defendant's medical health questionnaire did not rise to the type of willful, false representation that would trigger a forfeiture of benefits. Although we agree with the WCJ that claimant's credibility was problematic, defendant did not demonstrate that claimant knowingly gave untruthful answers or made false statements for purposes of obtaining benefits. Claimant clearly listed pre-existing back problems on the same medical-health questionnaire about which defendant complains. Consequently, based upon this record, we cannot say the WCJ erred in the factual findings based heavily on credibility determinations.
Deposition Costs
Finally, we find merit to defendant's contention that the WCJ erred in *31 casting it with the cost of the deposition of Maggie Blanchard because the deposition was not introduced at the trial. The general rule is that only depositions used at trial are taxable as costs. See LSA-R.S. 13:4533; Barrilleaux v. Franklin Foundation Hosp., 96-0343, p. 19 (La.App. 1 Cir. 11/8/96), 683 So.2d 348, 361, writ denied, 96-2885 (La.1/24/97), 686 So.2d 864. It is undisputed in the instant case that Maggie Blanchard's deposition was not introduced or accepted into evidence at trial. Thus, the WCJ abused its discretion in taxing that deposition fee as court costs to defendant. We hereby reverse that portion of the WCJ's judgment.

CONCLUSION
The judgment of the WCJ is reversed insofar as it taxes defendant with the cost of Maggie Blanchard's deposition. The WCJ's judgment is affirmed in all other respects. Defendant is to pay all costs of this appeal.
REVERSED IN PART; AFFIRMED IN PART.
NOTES
[1] Hon. Philip C. Ciaccio, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Defendant terminated claimant's employment shortly after the accident occurred. Claimant began working for another company, Easy Money Pay Day Loans, within one week of her termination. She was employed at Easy Money until May 15, 2000, and has not worked since that date.
[3] It is undisputed that defendant (through its workers' compensation insurer, LUBA) paid medical benefits totaling $974.33 to claimant for Dr. Lewis's bill and some prescriptions written by Dr. Smith between January 13 and March 13, 2000. No other medical expenses were submitted for payment until August 2000, after claimant notified defendant of her first surgery.
[4] Defendant does not question the amount awarded for penalties and attorney's fees.
[5] We note that Dr. Smith's deposition testimony was substantially the same as her testimony at trial wherein she correlated claimant's back surgeries with the work accident.
[6] Claimant contends that defendant waived the affirmative defense of forfeiture of benefits because it was not pled in the answer and it is being raised for the first time on appeal. However, we note that pleadings may be enlarged to include an affirmative defense not specifically pleaded where the evidence supporting the defense is introduced without objection. LSA-C.C.P. art. 1154; Edwards v. Edwards, 282 So.2d 858, 860 (La.App. 1 Cir.), writ refused, 284 So.2d 777 (La.1973). At trial, evidence and testimony regarding alleged misrepresentations made by claimant about her prior medical and accident history was introduced without objection. Accordingly, we will consider the evidence relating to claimant's alleged misrepresentations and how it affects her right to workers' compensation benefits.