# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 06-1302

**THOMAS CANNON, JR.**

**VERSUS**

**HAMILTON TRANSPORTATION**

**********

APPEAL FROM THE
OFFICE OF WORKER'S COMPENSATION, DISTRICT 02,
PARISH OF RAPIDES, NO. 02-08471
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

**********

**J. DAVID PAINTER**
**JUDGE**

**********

Court composed of Marc T. Amy, J. David Painter, and James T. Genovese, Judges.

**AFFIRMED.**

**Edward A. Kaplan**
**P.O. Box 12386**
**Alexandria, LA 71315**
**Counsel for Plaintiff-Appellee:**
    **Thomas Cannon, Jr.**

**Robert A. Dunkelman**
**S. Michael Cooper**
**P.O. Box 1786**
**Shreveport, LA 71166**
**Counsel for Defendants-Appellants**
    **Hamilton Transportation, L.L.C. and Employers Self Insurers Fund**

**PAINTER, Judge**.

Defendants, Hamilton Transportation, L.L.C. (Hamilton) and Employers Self Insurers Fund, appeal a judgment finding that they wrongfullyterminated Plaintiff, Thomas Cannon's, Workers' Compensation benefits; and denied surgery; reinstating the benefits and awarding penalties and attorney's fees.

FACTS

As the Workers' Compensation Judge (WCJ) stated in his reasons for judgment, it is undisputed that on October 4, 2002, while employed by Hamilton, Cannon had an accident in the course and scope of his employment. At that time, he was bent over changing a truck tire when he felt a pop in his lower back. He filed a disputed claim for compensation in November 2002, and Hamilton or its insurer paid workers' compensation benefits. A micro-discectomy was performed on Cannon's back in June 2003. In January 2004, Dr. Louis Blanda, Cannon's treating physician, released him to light duty employment. However, Cannon's symptoms allegedly continued, and in June 2004, Dr. Blanda suggested that he have additional surgery. In June 2004, Buster Fontenot, a vocational rehabilitation specialist hired by Hamilton, advised Cannon of some light duty jobs. In July 2004, based on those jobs and light duty restrictions set out in Dr. Blanda's report, Hamilton and its insurer terminated Cannon's compensation benefits. The jobs were not tendered to Dr. Blanda for his approval for some time, and he approved them in December 2004. Hamilton amended his disputed claim for compensation benefits alleging that the benefits were arbitrarily terminated and asking for penalties and attorney's fees.

Hamilton obtained a second medical opinion regarding the proposed additional surgery in October 2004 and refused to pay for the surgery recommended by

Cannon's treating physician. In February 2005, Hamilton hired a private investigator to conduct video surveillance of Cannon and, based on those videos, filed an amended answer to Cannon's disputed claim for compensation alleging that Cannon willfully made false statements for the purpose of obtaining workers' compensation benefits.

The matter was tried on May 16, 2006. The court rendered judgment and gave oral reasons for judgment on August 14, 2006, finding that Hamilton wrongfully terminated Cannon's benefits and denied surgery, reinstating Plaintiff's benefits and awarding penalties and attorney's fees. Hamilton and its insurer appeal. Cannon answers the appeal asking for additional attorney's fees for work done on appeal.

DISCUSSION

> The manifest error or clearly wrong standard governs appellate review in workers' compensation cases. *Smith v. Louisiana Department of Corrections*, 93-1305 (La.2/28/94), 633 So.2d 129. Under the manifest error standard, the appellate court must determine whether the WCJ's factual findings are reasonable in light of the record reviewed in its entirety. *Pugh v. Casino Magic*, 37,166 (La.App. 2d Cir.4/11/03), 843 So.2d 1202, *rehearing denied*. However, where there is manifest error or an error of law, the WCJ's decision is owed no deference by the reviewing court and may be overturned. *Roan v. Apache Chemical Transporters*, 37,671 (La.App. 2d Cir.9/24/03), 855 So.2d 920.

> This court has stated that "the workers' compensation act is remedial in nature and that in order to effectuate the humane policies it reflects, the law is to be liberally construed in favor of the injured employee." *Roan*, 855 So.2d at 923. However, statutory provisions allowing penalties and attorney fees are penal in nature and must be strictly construed. *Tron v. Little Italiano, Inc.*, 38,556, 38,557, 38,558 (La.App. 2d Cir.6/25/04), 877 So.2d 1055.

*Collins v. Patterson Drilling*, 39,668, pp. 5-6 (La.App. 2 Cir. 5/11/05), 902 So.2d 1264, 1267-68.

2

*Fraud Defense*

Hamilton asserts that the WCJ erred in failing to uphold its fraud defense under La.R.S. 23:1208. It is Hamilton's contention that Cannon lied about his ability to work and was actually working as an auto mechanic. Hamilton supports its contention with a video surveillance tape which shows Cannon apparently working on several vehicles.

In order to prevail on its fraud defense, Hamilton must prove: (1) that Cannon made a false statement or representation; (2) that he made the false statement or representation willfully; and (3) that he made it for the purpose of obtaining any workers' compensation benefits or payment. *Standard Companies, Inc. v. Trahan*, 05-593 (La.App. 3 Cir. 12/30/05), 918 So.2d 1167, *writ denied*, 06-278 (La. 4/28/06), 927 So.2d 285.

The WCJ found that the video was not sufficient to show that Cannon was working on vehicles not owned by himself. We note that nothing in the video demonstrates that Cannon was being paid for the small amount of car repair work shown. Further, the WCJ found that nothing shown indicated that Cannon was doing anything incompatible with the restrictions placed on him by his physicians and that the video fell short of showing that Cannon is capable of doing sustained work on a daily basis. While the WCJ acknowledged certain inconsistencies in Cannon's trial and deposition testimony and the matters shown on the video tape, he found that these contradictions did not rise to such a level as to warrant forfeiture of benefits.

Our review of the record convinces us that Hamilton has not carried its burden of proof in this regard. The video shows Cannon working on two cars for less than one-half hour each over a three day period. Nothing in the video or testimony

3

establishes that Cannon was paid for any automotive repair work after his accident. Nothing in the video or testimony establishes that Cannon did work incompatible with the restrictions placed on him by his physicians. Nothing in the video or testimony establishes that Cannon was capable of performing as a full-time auto mechanic. Because there is no proof that Cannon was working on automobiles for payment, or that he was able to work as a mechanic, there has been no showing that Cannon made a false statement regarding his employment or his employability. Accordingly, we find no error in the WCJ's decision to reject Hamilton's fraud defense.

*Benefits*

Hamilton next asserts that it was justified in terminating Cannon's benefits because Cannon's treating physician released him to light duty work, and Cannon has not shown that he is not capable of earning 90% of his average weekly wage so as to be entitled to Supplemental Earnings Benefits (SEBs) Under La.R.. 23:1221.

The WCJ found that the surgery recommended for Cannon and the treatment necessitated by that surgery entitled him to temporary total disability benefits (TTDs). This conclusion is supported by the evidence of Dr. Blanda, Cannon's treating physician who recommended the surgery, and that of Dr. Gregory Gidman, who opined that if Cannon was going to have additional surgery, he had not reached maximum medical improvement and would not do so until nine to twelve months post-surgery.

The WCJ had a reasonable basis for finding that Cannon is entitled to TTDs. Thus, finding no manifest error, we affirm his award of TTDs.

*Penalties and Attorney's Fees*

Finally, Hamilton argues that the WCJ erred in awarding penalties and attorney's fees because its decision to terminate benefits and deny payment of surgery were reasonable in light of the surveillance video, Cannon's refusal to pursue the proffered jobs, and the medical opinions of Drs. Gaar and Gidman.

The evidence of record suggests that benefits were terminated, and Hamilton later tried to find an excuse for its actions. First, the benefits were terminated months before the surveillance video was made. Addtionally, while Hamilton asserts that it was justified in terminating benefits because of Cannon's failure to pursue the jobs located by the vocational rehabilitation specialist, it failed to have those jobs reviewed by Cannon's treating physician for a determination as to whether he was physically able to perform them until several months after benefits were terminated. *See Harris v. Christus St. Patrick Hosp.*, 02-1502 (La.App. 3 Cir. 10/22/03), 857 So.2d 1278, *writ denied*, 03-3193 (La. 2/13/04), 867 So.2d 697 (claimant not unreasonable in failing to pursue jobs not approved by her physician).

Hamilton next asserts that the WCJ erred in finding that it unreasonably failed to authorize additional surgery because the testimony of Dr. Frazier Gaar and the surveillance video support the conclusion that Cannon does not need additional surgery.

Dr. Gaar saw Cannon only once in June 2005. Dr. Gidman, although he saw Cannon on more than one occasion, stated only that he felt additional testing should be done before considering surgery. Dr. Blanda treated Cannon over a period of years. In June 2004, Dr. Blanda recommended anterior lumbar interbody fusion

5

surgery for Cannon's continued complaints of pain, and opined that the surgery would give him fairly good relief of his symptoms.

> It is the function of the WCJ to assess the weight to be accorded both the lay and the medical testimony, and the court may accept or reject the opinion of a medical expert depending upon what impression the qualifications, credibility, and testimony of that expert make on the court. *Davison v. Horseshoe Casino, Inc.*, 31,166, pp. 4-5 (La.App. 2 Cir. 10/28/98), 720 So.2d 785, 787, *writ denied*, 98-2950 (La.1/29/99), 736 So.2d 833. .

*Ivy v. V's Holding Co.*, 02-1927, p. 7 (La.App. 1 Cir. 7/2/03), 859 So.2d 22, 28.

Further, as stated by the WCJ, Hamilton waited several months before seeking a second opinion as to the need for additional surgery. This failure to take timely action is sufficient to support the trial court's determination that the failure to authorize benefits was arbitrary and capricious. *See Foster v. Liberty Rice Mill*, 96-438 (La.App. 3 Cir. 12/11/96), 690 So.2d 792.

Given the evidence of record and the time frame within which actions were taken, we find no error in the WCJ's decision to award penalties of $2000.00 for arbitrary and capricious termination of benefits and $2000.00 for failure to authorize surgery.

*Answer to Appeal*

In his answer to this appeal, Cannon asks for additional attorney's fees for work performed on appeal. Given the fact that the appellant was unsuccessful in this appeal and that it necessitated additional work, we find that an additional award of fees is appropriate. *See Mauldin v. Town of Church Point*, 05-1294 (La.App. 3 Cir. 4/5/06), 925 So.2d 1269.Having considered these proceedings, along with the Prewitt's brief filed with this court, we award an additional $1,500.00 in attorney's fees on appeal.

CONCLUSION

For these reasons, the judgment rendered by the WCJ is affirmed. An additional attorney's fee on appeal in the amount of $1,500.00 is awarded to the Appellee, Thomas Cannon, Jr. Costs of this appeal are assessed to Hamilton and Employers Self Insurers Fund.

AFFIRMED.