AMY, J.,
dissenting.
hWhile the majority discounts many of the workers’ compensation judge’s evaluations in reaching its conclusion, I find an affirmation required in light of the deferential standard of review owed factual findings and credibility determinations. In short, my review of the record reveals support for the ruling that the employer sustained its burden of proving the defense of self injury under La.R.S. 23:1081(l)(a).
First, and as will be explained below, I do not find that the workers’ compensation judge was required to reject the opinion of Dr. Rennie Culver. Dr. Culver diagnosed Mr. Fontenot as having a factitious disorder, which he described as “a form of pathological behavior in which, for no apparent purpose other than to assume the patient role, an individual will fabricate symptoms or signs of either physical or mental illness or both.” Dr. Culver explained that “patients may inflict injury on themselves” and that they may do so “by a variety of means.”
Further, the workers’ compensation judge relied on medical records in determining that the employer proved self injury. After citing various portions of the medical records and the testimony of Drs. Stubbs, Stephens, and Culver, the workers’ compensation judge referenced “emergency room records from Our Lady of Lourdes ... wherein the doctor noted that Mr. Fontenot asked to be admitted to the hospital so that the staff could bring him his food and change his bed. It is also supported by [2the sheer multitude of hospital admissions and medical procedures and tests Mr. Fontenot has undergone since his back surgery in February 2003.”
Although Mr. Fontenot underwent knee surgery in June 2003, medical records detail the resulting wound’s failure to heal and to remain healed. Corresponding depositions indicate that some of Mr. Fonte-not’s physicians were perplexed by his condition and began to suspect self injury. As noted by the workers’ compensation judge, the records also contain several instances in which Mr. Fontenot was reported to be touching his wounds or making comments regarding continued hospitalization.
Dr. Malcolm Stubbs, an orthopedic surgeon, explained that he performed arthroscopic surgery on Mr. Fontenot’s knee in June 2003, and that the resulting wounds were healing by Mr. Fontenot’s July 14, 2003 appointment. His sutures were intact at that time. By the following week, however, Mr. Fontenot reported that the wound had opened. Mr. Fontenot was readmitted to the hospital on July 21, 2003 where Dr. Stubbs performed an additional surgery to “clean out this wound- and wash out his knee.” By this time, Dr. Stubbs *310 was concerned that “something very unusual was happening.” When Mr. Fonte-not returned two weeks later, on August 5, 2003, the sutures were intact, but “he had a lot of redness around the wound and it did appear to be dehiscing once again.”
Dr. Stubbs did not make a diagnosis related to self injury and explained that he was not qualified to do so. He stated, however, that he was concerned that Mr. Fontenot was injuring himself after the second surgery. He explained that “[f]or that just to keep recurring over and over without any signs of immunocompromised status of the patient, that’s the first time that I recall that possibility occurring to me.” Dr. 13Stubbs stated that “this was an extremely unusual case that did not make any sense to me whatsoever.”
Dr. Anthony Stephens, a plastic surgeon who also treated the non-healing right knee and thigh wounds, explained that he, too, became concerned about the possibility that Mr. Fontenot was injuring himself. Although Dr. Stephens initially tried conservative treatment, he closed the wound surgically in April 2004, using a skin graft to cover a portion of the wound. Mr. Fontenot was ordered to bed rest at a Baton Rouge hospital. Dr. Stephens explained that when he changed the dressing four or five days later, it appeared that healing was progressing and there was a “beautiful result at that point[.]” However, within two days the wound again “completely separated, the graph [sic] had sluffed completely free from the repair and he had the wound just as big as he had it from the beginning.” Dr. Stephens confirmed that he considered intentional manipulation of the wound and that when he confronted Mr. Fontenot about that possibility, Mr. Fontenot denied self injury.
Thereafter, Dr. Stephens performed another skin graft procedure in May 2004. Dr. Stephens reported that when he visited Mr. Fontenot in the hospital several days after the procedure, the graft was a “100 percent take[.]” However, while he was recording his notes outside of the room, the “nurse comes running down the hall five minutes later saying he just pulled the graft off.” Dr. Stephens denied that he accepted Mr. Fontenot’s explanation that he was sedated when he did so and stated:
Well, just the whole picture of this whole problem, I mean, we had a presentation from an arthroscopic procedure, a hematoma that gets infected, a non-healing wound that always, should heal with a wound vac, I’ve never seen it not, then we do an operation that essentially fixes the problem and it breaks apart as soon as I take the dressing off in two day [sic], which you just never see. I mean, I can understand a wound not healing and having a problem with a surgery but that usually |4presents itself maybe a week to two weeks later. The whole thing just does not add up.
Dr. Stephens explained that, although he suspected Munchausen’s Syndrome, he did not make that diagnosis.
As noted above, Dr. Culver explained that he diagnosed Mr. Fontenot as having a “factitious disorder” based on his August 2004 exam and review of the medical records. Dr. Culver referenced records relating to Mr. Fontenot’s back surgery, which he felt revealed suspicion of self-injury as early as 2001, as well as Dr. Stephens records regarding difficulty in healing of the knee wounds. Dr. Culver suspected that the factitious disorder may have had a much earlier onset and felt that the nurse’s report of the skin graft incident corroborated his diagnosis.
While Mr. Fontenot contends, and the majority determines, that Dr. Culver’s opinion should have been rejected since he was consulted for litigation purposes, I *311 find no evidence in the record requiring such a rejection. Neither do I find that the workers’ compensation judge was required to favor the opinion of Mr. Fonte-not’s choice of psychiatrist, Dr. James H. Blackburn. Significantly, it is the function of the workers’ compensation judge to assess the weight of the testimony of lay and medical witnesses. See Cannon v. Hamilton Transp., 06-1302 (La.App. 3 Cir. 2/7/07), 948 So.2d 1250, quoting Ivy v. V’s Holding Co., 02-1927, p. 7 (La.App. 1 Cir. 7/2/03), 859 So.2d 22, 28. In this role, the workers’ compensation judge may accept or reject an expert’s opinion depending upon “what impression the qualifications, credibility, and testimony of that expert make on the court.” Id. at 1254. I believe that the reasons for ruling in this case reflect this type of evaluation. Neither the acceptance of the witnesses offered by Wal-Mart, nor the lesser weight placed on those of Mr. Fontenot was an abuse of discretion. See Beverly v. Boardwalk Constr., 00-00219 (La.App. 3 Cir. 10/11/00), 771 So.2d 741, writ denied, 00-3096 (La.1/5/01), 778 So.2d 1142. I see no indication that these evaluations should be performed anew on appeal. Although Mr. Fontenot contends that Dr. Culver’s testimony should have been rejected as biased, counsel questioned Dr. Culver regarding his practice and the parameters of his examination. These facts were available for the workers’ compensation judge’s consideration. Thus, I would not disturb the ruling regarding La.R.S. 23:1081(l)(a).
Neither do I find merit in the remaining argument regarding the contention that the workers’ compensation judge’s approval of Wal-Mart’s termination of benefits, effective September 28, 2004, was in error. These arguments are dependent on the assertion that undue weight was placed on Dr. Culver’s testimony and too little placed on those of his own witnesses. In particular, Mr. Fontenot asserts that the workers’ compensation judge should have dismissed Dr. Culver’s testimony regarding a factitious disorder and/or self injury due to the ultimate healing of the wound. Mr. Fonte-not contends that the trial court should have accepted Dr. Thibodeaux’s assertion that the wounds’ initial failure to heal had a biological basis. As explained above, I find this assertion without merit as the workers’ compensation judge found, with a permissible basis in the record, that Mr. Fontenot’s complaints, as of September 28, 2004, were due to self injury. Thus, the record supports the determination that the employer proved the defense of La.R.S. 23:1081(l)(a). Further, the claimant points to no portion of the medical record or testimony indicating that Mr. Fontenot has ongoing work restrictions stemming from a work-related injury.
For these reasons, I respectfully dissent.